SULLIVAN *v*. ARKANSAS VALLEY BANK.

Opinion delivered February 13, 1928.

1. PARTIES—DEMURRER FOR DEFECT OF PARTIES.—A demurrer on the ground of defect of parties does not raise the question that there is a misjoinder of parties.

2. CORPORATIONS—APPLICATION OF DOCTRINE OF ULTRA VIRES.—The doctrine of *ultra vires*, meaning that the acts of a corporation in excess of its powers are void, does not apply to torts committed by a corporation, but only to its contracts or contractual relations.

3. BANKS AND BANKING—LIABILITY OF BANK FOR TORTS.—Where a bank falsely represented that a mortgage company had securities sufficient to pay its bonds, it is liable, notwithstanding an alleged want of authority of such bank to make such representations.

4. EQUITY—EFFECT OF WANT OF JURISDICTION.—Where a demurrer to the jurisdiction of the chancery court was well taken, the court should not dismiss the complaint, but should transfer the cause to the law court.

5. EQUITY—JURISDICTION TO COMPEL ACCOUNTING.—A complaint against a bank by purchasers of the bonds of a mortgage company to recover for the bank's false representations inducing the sale of such bonds, alleging that the mortgage company was bankrupt, and that the bank held a large number of securities in trust for plaintiffs and had been guilty of a breach of trust, *held* to give chancery jurisdiction to compel an accounting from the bank and for the appointment of a trustee to take charge of the securities held by the bank and to sell them for the bond-holders' benefit.

6. EQUITY—SUIT FOR ACCOUNTING—WHEN NOT PREMATURE.—A suit by bondholders against a bank and others for misrepresentations in the sale of a mortgage company's bonds, and asking that securities held by the bank in trust be sold and that the bond-holders recover from the bank and its officers such sum as might be found to represent plaintiff's losses, *held* not objectionable as premature, since a personal judgment was sought only as to the excess due after sale of the securities.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*Dobbs & Young* and *John D. Arbuckle,* for appellant.

*Dailey & Woods, Hill, Fitzhugh & Brizzolara* and *Warner, Hardin & Warner,* for appellee.

MEHAFFY, J. The appellants brought suit in the Sebastian Chancery Court against the Arkansas Valley

Bank, a State banking institution, and individuals, trustees of the John A. Guthrie Mortgage Company, bankrupt. Suit was brought for themselves and all other persons similarly situated. After suit was brought, numerous other bondholders intervened and made themselves parties plaintiff, and adopted the complaint and amended complaints of the original plaintiffs.

Plaintiffs alleged that the defendant, John A. Guthrie, was president, W. H. Johnson vice president, Hugh Branson treasurer, and Oran C. Yoes secretary of the John A. Guthrie Mortgage Company, and were also stockholders and members of the board of directors, and composed the executive committee of the said John A. Guthrie Mortgage Company, and, by the by-laws of the said company, said defendants were required to be actively engaged, and were actively engaged, in the management and financial condition of the John A. Guthrie Mortgage Company; that each and all of them held themselves out to the public as being actively engaged in the management, direction and control of the affairs of the mortgage company; that they caused to be printed advertisements, circulars, letters and other printed matter, and caused the same to be circulated throughout Arkansas, Oklahoma, Kansas, Vermont, and other states, representing themselves to be in charge of and directing the affairs of said company.

Plaintiffs alleged that the Arkansas Valley Bank was a banking institution under the laws of Arkansas, and doing business at Fort Smith, Arkansas, and that Hugh Branson was its president; that all of said defendants daily and continuously held out to the general public, and especially to these plaintiffs, that the mortgage company was a solvent concern of unquestioned financial soundness, and deserving of public confidence, and further, by word of mouth and by private letters, generally throughout the county, assured the general public, and especially these plaintiffs, that the said mortgage company was wholly solvent and reliable, and carried a large surplus, and that investors in its securities and

stock could stand no chance to lose their money, and that it had more money than it could loan on farms throughout the States of Arkansas and Oklahoma. That the officers and directors of the executive committee of the mortgage company authorized and caused to be issued bonds of said company, and advertised that said bonds were secured by first mortgages held by the defendant, Arkansas Valley Bank, as trustee for the purchasers; that the plaintiffs relied upon the said advertisements, and purchased part of the bonds. Many others purchased bonds in a like manner; that the Arkansas Valley Bank, through its president, Hugh Branson, accepted the trust, and that each of said bonds bore on its face a certificate which was set out in said complaint, setting out the securities and mortgages. That the advertisements, circulars and letters, etc., were false and wholly untrue; that the defendants knew the bonds were not secured by first mortgages, but many of the securities were unsecured promissory notes, and others were notes given where no money had ever been received by the borrower. That the mortgage company was, on July 14, 1926, declared bankrupt; that the Arkansas Valley Bank holds in trust for the plaintiffs a large number of notes, secured and unsecured, but that they are insufficient to liquidate the indebtedness; a large part of them are second and third mortgages. That the Arkansas Valley Bank had been guilty of gross breach of duty as trustee; that the Arkansas Valley Bank knowingly and negligently breached its trust agreement and dissipated or permitted to be dissipated trust property, and that it knowingly and fraudulently made and executed and put forth various false and fraudulent certificates in writing upon various bonds held by the plaintiffs, duly signed by the authorities of said bank officials, which false certificates were executed, made and put forth with the fraudulent intent that it would be relied upon, and it was relied upon, and was known by the officials and directors of the bank to be false, and was done with the intention of deceiving, and did deceive, plaintiffs. Plaintiffs further

alleged that the certificates issued by the bank were false and fraudulent, and known to be so, made with the intention to deceive, and did deceive, the parties.

The complaint is very lengthy, but it is unnecessary to set it out in full here.

Defendants filed a demurrer, because they alleged, first, that the complaint did not state sufficient facts to constitute a cause of action against the bank; second, because the court has no jurisdiction of the subject-matter; third, because there is a defect of parties.

There were other demurrers filed by other defendants, but they are all in the same language. That is, they demur on the ground that there is a defect of the parties; that the court has no jurisdiction, and that the complaint does not state facts sufficient to constitute a cause of action. The court sustained the demurrers on the ground of defect of parties defendant. Then, after plaintiffs had refused to elect or to amend, and having elected to stand upon the amended or supplemental complaint, the court then sustained the demurrer on each ground. Plaintiffs excepted, and have prosecuted an appeal to this court.

Appellant's first contention is that the holding of the court that there was a defect of parties and sustaining the demurrer because of defect of parties defendant, is error. We agree with counsel for appellant in this contention. There is no defect of parties defendant.

Defect of parties means too few, and not too many. The parties have discussed misjoinder of parties and misjoinder of causes of action, but have not discussed defect of parties.

"The first example in support of the demurrer is that there is a defect of parties plaintiff. But that, as a ground of demurrer, means too few and not too many. A demurrer alleging this particular objection can be interposed therefore only in case of a nonjoinder of necessary plaintiffs or defendants, and never in a case of misjoinder." *Tieman* v. *Sachs*, 52 Ore. 560, 98 Pac. 163.

It is doubtful whether misjoinder of parties could be raised on demurrer. Our statute provides:

"The defendant may demur to the complaint where it appears on its face either, first, that the court has no jurisdiction of the person of the defendant or the subject of the action; second, that the plaintiff has no legal capacity to sue; or, third, that there is another action pending between the same parties for the same cause; fourth, that there is a defect of parties plaintiff or defendant, or that the complaint does not state facts sufficient to constitute a cause of action."

But whether a demurrer would reach misjoinder of parties or not, that question is not before the court, because the demurrer is on the ground of defect of parties, and not misjoinder.

"It is urged that there is a misjoinder of parties defendant. As this does not come within the terms of defect of parties, it is doubtful whether the question may be raised on demurrer." *United States* v. *Comet Oil & Gas Co.* (C. C.), 187 Fed. 674.

Counsel in their brief and argument do not claim that others should be made parties or that the defendants are too few, and there is no defect of parties, and the demurrer based on this ground should be overruled. The appellants for the bank say in their brief that the court was clearly right in sustaining the demurrer because there was a defect of parties defendant. But they argue that the allegations with reference to the defendant, Johnson, were in no wise connected with the allegations with reference to the Arkansas Valley Bank. That might be true and still the court could not sustain a demurrer for defect of parties, because, if that was true, it would be merely a misjoinder of parties, and that question is not raised by the pleadings.

Attorneys for Johnson and Branson argue defect and misjoinder of parties and causes of action as if those questions were raised by the demurrer, which is based on the ground of defect of parties. The question of mis-

joinder of parties defendant or misjoinder of causes of action was not raised by the demurrer.

It is earnestly contended by the attorneys for the Arkansas Valley Bank that, even if the allegations of the complaint are true, it does not state a cause of action against the bank. It is argued that for a bank to attempt to do the things which it is alleged the bank did do in this instance is *ultra vires,* and that, for that reason, the bank is not liable, and learned counsel cite the case of *Grow* v. *Cockrill,* 63 Ark. 418, 39 S. W. 60, 36 L. R. A. 89.

The only question decided in that case, as we understand it, was that a national bank is not authorized to act as a broker in lending money to others, and the court said that the bank had no authority to transact business of that kind, and that the teller was not acting within the scope of his authority and business when he committed the torts complained of, and cites a Pennsylvania case as holding that.

The allegations of the complaint in this case against the bank are that it falsely represented that it had securities on hand sufficient to pay these bonds; that it made and published false statements about the condition of the mortgage company; that it induced these persons to invest their money in worthless bonds when it knew they were worthless, and the suit is based on tort, so far as the bank is concerned, and it has been many times held that the doctrine of *ultra vires* does not apply to a corporation's torts, but only to its contracts or contractural relations. Suits are maintained against corporations every day and recoveries had for negligence, willful wrong, and all kind of torts, and it has never been contended, so far as we know, that a corporation was not liable for these things because it was *ultra vires.*

"Is the doctrine of *ultra vires* applicable to this case? The doctrine of *ultra vires* has never been held to apply to a corporation's torts, but is limited to its contractural relations." *Greeley National Bank* v. *Wolf,* (C. C. A.) 4 Fed. Rep. (2d) series, 67.

The above is a rather recent case, decided in January, 1925, and it cites a number of· cases holding that doctrine.

"Corporations are liable for every wrong they commit. And in such cases the doctrine of *ultra vires* has no application. They are also liable for the acts of their servants while such servants ·are engaged in the business of their principal, in the same manner and to the same extent that individuals are liable under like circumstances. * * * Recurring to the case in hand, it is now well settled that, if a ·bank be accustomed to take such deposits las the one here in question, and this is known and acquiesced in ·by its directors, and the property deposited is lost by the gross carelessness of the bailce, a liability ensues in like manner as if the deposit had been authorized by the terms of the charter." *National Bank* v. *Graham,* 100 U. S. 699, 25 L. ed. 750.

The above case cites quite a number of authorities.

"In *Bissell* v. *Michigan So. & N. I. R. Co.,* 22 N. Y. 258, a leading· case, the ·court held that corporations, like natural persons, have the power and capacity to do wrong. That corporations have no right to violate their charters, but they have the capacity to do so, and are to be bound by their acts, 'where a repudiation of such acts would result in manifest wrong to innocent parties; that the plea of *ultra vires,* according to its just meaning, imports, not that the corporation could not make the unauthorized contract, but, that it ought not to have made it; that such a defense is not to be entertained where its allowance will do great wrong to innocent third parties; that, although corporations cannot rightfully do any act not authorized by their charters, yet such acts, when done, are to be regarded as the corporation's acts; and if, in the course of their performance, others are injured by the negligence of the officers of the corporation, the corporation is responsible; such liability arising from the duty which every railway company owes to persons within its cars with its consent."

Citing a number of authorities, the court, continuing, says: "While they (corporations) have no right to violate their charters, yet they have the capacity to do so, and are bound by their acts where a repudiation of them would result in manifest wrong to innocent parties, and especially when the offender alleges his own wrong to avoid a just responsibility." *Burke* v. *State,* 64 Misc. Rep. 558, 119 N. Y. Supp. 1089. The court in the above case also said: "It would seem that the action of the defendant in assuming to carry on the business of dentistry was illegal and *ultra vires*. But, though it was beyond the corporate powers of the defendant to engage in the business, this does not relieve it from the torts of its servants committed therein."

The Supreme Court of the United States, in a later decision than the 100 U. S., quoted with approval the case of *National Bank* v. *Graham,* and, after quoting from the Graham case, the court said:

"We are of opinion that the execution of the receipt or certificate in question and its transmission by mail direct by the defendant to the plaintiff created the relation of bailor and bailee between her and the defendant, and made it an act of gross negligence for the defendant to deliver or dispose of or appropriate the securities in question on the sole request of Juda, and without her direct authority."

The court further on said:

"Knowing, from what passed between Mass and Juda, that the bonds were to be used to raise money for the benefit of Walker Sons & Company, and knowing that such use was an improper disposition of the bonds unless the transaction was affirmatively and directly sanctioned by the plaintiff, the defendant became a party to the misappropriation of the bonds. It is immaterial, in this view, whether or not the defendant received any portion of the money loaned by the Bank of Commerce on the security of the bonds." *Manhattan Bank* v. *Walker,* 130 U. S. 267, 9 S. Ct. 519, 32 L. ed. 959.

The appellee is correct in the statement that a bank organized under the laws of the State of Arkansas has restricted powers, and this is true of any other corporation. But any corporation may have the capacity to do many things that it does not have the right to do. As we understand it, the bank would not be liable on any contract where the contract was beyond its power to make, but *ultra vires* has reference to contractual relations and not to tort. But, if the bank and its officers committed the acts alleged in the complaint, the bank could not defend itself when charged with the wrongful conduct by showing that it did not have authority to commit the acts.

We think the complaint states a cause of action, and that the demurrer based on the ground that the facts stated did not constitute a cause of action should have been overruled.

The next ground of demurrer is that the court had no jurisdiction of the subject-matter. The court dismissed the cause when, if it appeared to the court that the demurrer as to jurisdiction was well taken, it should not, on that ground, have dismissed the complaint, but should have transferred it to the law court.

The only thing that appellees say about the ground of demurrer last mentioned is: "That the matters involved as against them were not cognizable in equity, and was purely a common-law action for a tort."

"The complaint prayed for an accounting against the bank, that a trustee be appointed to take charge of all securities, funds and assets held by the bank, that they be ordered sold for their benefit, and that the plaintiffs have and recover of and from each defendant such a sum as may be found to be their losses sustained by the false representations and deceit of the directors," etc.

We think the allegations of the complaint are sufficient to justify the prayer, and that those allegations are sufficient to give the chancery court jurisdiction.

It is also contended by appellees that the suit was prematurely brought. Whether this question could be

raised by demurrer in this particular case need not be decided, because the complaint asks that this property first be sold—this is, the securities; and it could not be premature, certainly, in asking this relief, and if this relief is granted, then the other would, of course, not be premature, because they would only recover a judgment against the parties for any excess or any amount for which the defendants were liable in excess of the amount that the securities sold for.

The case will be reversed, and remanded with directions to overrule the demurrers. It is so ordered.