ARKANSAS VALLEY BANK *v.* McCLENAHAN.

Opinion delivered March 3, 1930.

*Warner & Warner* and *Daily & Woods*, for appellants.

*Evans & Evans, Ratcliffe & Ratcliffe, Lee Miles, H. M. Jacoway, O. M. Young* and *A. M. Dobbs,* for appellees.

MEHAFFY, J. This action was begun in the Sebastian Chancery Court by appellees to recover from the Arkansas Valley Bank and others, alleging misappropriation of moneys and securities and cashing checks without authority. On October 23, 1927, the court, on application of the appellees, appointed a master to hear and take testimony, and make his report to the court, and to do and perform all things, and to possess and have all powers usually possessed by masters in chancery. Both parties consented to the appointment of Hon. C. M. Wofford as master. The master took testimony, filed his report, together with the evidence taken by him, and in addition to reporting the evidence, made the following finding: "I find from the facts: (a) That Mr. M. M. Hayes acted as the special agent of Mrs. Jessie D. McClenahan and her daughter, Miss Marianna McClenahan, to invest their funds, and that he did not represent the bank. (b) That he had authority to sign the names of. Mrs. McClenahan and her daughter to checks, and that the Arkansas Valley Bank was authorized to cash the six checks testified to as having been signed by M. M. Hayes, and amounting to the total sum of $5,900.67." No additional testimony was taken in court, but the case

was heard on the testimony taken before the master, including depositions of witnesses, documentary evidence, and the pleadings in the case. After the master had filed his report, both parties filed exceptions to the report, and the court, after a hearing on the exceptions filed by both parties, sustained the several exceptions of the defendants to the report of the master, and sustained the plaintiff's exceptions number 10 and number 18, and found the issue of facts as well as of law in favor of appellees, and against appellants, and entered a decree in favor of appellees for the sum of $19,300.37 with 6 per cent. interest from November 1, 1928, until date, amounting to $19,636.83 on May 20, 1929, the date of the decree. Appellants prosecuted this appeal to reverse said decree.

The appellees moved from Oklahoma to Fort Smith in December, 1912. Mrs. McClenahan and her husband were separated, and as the result of a property settlement, she received through her attorney, Judge W. A. Falconer, a check for $5,000, three notes aggregating $19,000, bearing six per cent. interest, and $6,000 in Liberty bonds, a total of $30,000 received in the settlement. When Judge Falconer received this, he told appellees, and they met him at the Arkansas Valley Bank May 12, 1920, and Judge Falconer advised them to deposit the money and securities with the Arkansas Valley Bank, telling them that he did business at that bank, and that, if they would let the bank attend to their matters, the income or interest from the $30,000 would make them a living.

Of the $5,000 cash received, $4,500 was deposited in the bank as a savings account, and $500 as a checking account. The Liberty bonds and notes were put in a safety deposit box, which was secured by appellees upon the advice of the officers of the bank.

John C. Gardner was president of the Arkansas Valley Bank at the time, M. M. Hayes was active vice-president, and G. H. Sexton was vice-president and cashier. Both appellees were ignorant of business

methods, knew nothing whatever about what to do with their moneys and securities except as they were advised by the officials of the bank and Judge Falconer, and Judge Falconer advised them to deal with that bank, and that they would be properly taken care of. At the time the deposit was made, the Arkansas Valley Bank and the Arkansas Valley Trust Company occupied the same room. The officers of the Arkansas Valley Bank were the officers of the Arkansas Valley Trust Company. M. M. Hayes, the active vice-president, had lived in Oklahoma, and the appellees had been acquainted with him in Oklahoma, and they did not know any other officers of the bank. Hayes was more active in attending to their affairs than any other person in the bank; in fact their business was transacted by him almost entirely. In September, 1920, the Arkansas Valley Bank and the Arkansas Valley Trust Company separated, and thereafter occupied offices in different buildings. M. M. Hayes remained as active vice-president of the Arkansas Valley Bank until sometime in 1922, at which time he ceased to be active vice-president, and ceased to draw a salary from the bank as vice-president. He still remained a director and vice-president, however, and signed letters written by him as vice-president of the Arkansas Valley Bank. In 1926 Hayes was arrested, charged with forgery and embezzlement and placed in jail, and appellees wanted to make his bond and drew a check for $3,000. The sheriff called on the bank, and the bank said they did not have money there to pay it. They expressed surprise at not having the money and went to the bank and wanted to see their securities, claiming that, if the money was not there, the securities should be. They then discovered that, while there was a list of the securities in the deposit box, no securities or notes were found, except one $1,000 note executed by Hendrix, and a $2,000 note was found in Hayes' desk. Three notes for $1,000 each were found in the Merchants' National Bank, and had been used by Hayes as collateral to a note of his for

borrowed money. When the Merchants' National Bank learned that Hayes had used these notes as collateral without authority, it surrendered them to Mrs. McClenahan. The total amount found at the Arkansas Valley Bank, and the notes at the Merchants' National Bank was $6,000. The agreement, when the appellees deposited $4,500 in the savings account was that their money deposited in that way should bring 4½ per cent. interest, but it was understood that it would be invested in securities at a higher rate of interest. The McClenahans had bought a home and furniture and used some of the money in this way, however Miss McClenahan had worked, received a small salary, and the money she received as salary was also used in making payments on the home and furniture. The master found that the amount of the loss of appellees was $22,731.77. Hayes, in his testimony admitted that he embezzled $12,000 or $13,000 of the McClenahans' money, and embezzled the money of the Arkansas Valley Bank. Each of the appellees was given a key to the safety box. No one, however, could get into the safety box, even with the key, without some person from the bank going with them and using the master key. After some time, Hayes, stating that he wanted to get into the deposit box to get some notes, or to make an investment, secured the key of Miss McClenahan and never returned it. The evidence is entirely too long to set out. It would, in fact, make a considerable volume, but such evidence as appears to be necessary will be mentioned in the opinion.

The appellant contends for a reversal, first, on the ground that the master's findings not only must be given due weight, but that, since both sides consented to the particular individual named as master, his findings are conclusive. Attention is called to the case of *Carr* v. *Fair*, 92 Ark. 359, 122 S. W. 659, 19 Ann. Cas. 906, and in that case the court said, quoting with approval from the case of *Tilghman* v. *Proctor*, 125 U. S. 136, 8 S. Ct. 894: ''In dealing with these exceptions, the conclusions of the mas-

ter, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake upon his part," and, continuing, the court said: "The findings of the master appointed by the court of its own motion should not be lightly disregarded by the court; they should be highly persuasive; and when the findings are based upon conflicting evidence, they should be accorded the great weight to which they are entitled. And if the court does not give to the findings of such master that weight which the evidence shows they are entitled to, its action will be reversed upon appeal." The doctrine announced in the case relied on by appellants has been several times approved by this court.

In the instant case, however, the master reported the evidence, and at the close of his report made the findings relied on by appellants. These findings, however, do not purport to be findings of fact. The master states: "I find from the facts that M. M. Hayes acted as the special agent of Jessie and Marianna McClenahan, and did not represent the bank." This is the conclusion reached by the master from the facts in evidence. He also finds from the facts that Hayes had authority to sign the checks. The rule is, as announced by this court, that the findings of fact by a master are persuasive, when such findings are based on conflicting evidence. When the findings of a master are based on conflicting evidence, they should have great weight, but they are not conclusive even when based on conflicting evidence. In the instant case, the undisputed evidence shows that Judge Falconer and the McClenahans went to the Arkansas Valley Bank. They were requested to meet Judge Falconer at the bank, not at the trust company, and they were introduced to the officers of the bank and not to the officers of the trust company. It is true that there is some evidence that Gardner said, "We have the Arkansas Valley Trust Company here to attend to those things."

There is but one reasonable conclusion we think from that statement, if Gardner made it, and the proof tends to show that he did, and that conclusion is, that "we" meant the Arkansas Valley Bank, so he said the bank has this trust company here. The appellees being inexperienced in business, we think they would necessarily conclude that Mr. Gardner meant that the bank would attend to their business. It was all the same building, the deposit was made in the bank, the securities were left with the bank, all the dealings were with the officers of the bank, and this is the testimony with reference as to whether Hayes was acting as their agent or whether the bank was, and we think the testimony conclusively shows that the bank was the agent of the McClenahans and not Hayes.

It is next contended, that the appellees' testimony precludes a recovery for any amount in excess of $5,900.67. We do not agree with appellants in this contention. On the other hand, we think the testimony conclusively shows that the McClenahans went to the bank for the purpose of dealing with the Arkansas Valley Bank, and with no one else, and that they at least thought that the bank was attending to their business. They were justified in this belief, because they were introduced to the officers as officers of the Arkansas Valley Bank, and while it is true the same men were officers of the Arkansas Valley Trust Company, the McClenahans did not at any time do business with them, or with Hayes, as an officer of the Arkansas Valley Trust Company, but dealt with them as officers of the Arkansas Valley Bank.

Appellants rely on a statement, or answer to a question by Miss McClenahan, which is as follows: "The conversation was held between my mother, Mr. John C. Gardner and Mr. M. M. Hayes. My mother said to Mr. Hayes and Mr. Gardner: 'Now you will see that this money is kept invested; that it will be kept in circulation.' and Mr. Gardner said: 'That is my business, and I will. We have the Arkansas Valley Trust Company.

That is what it is here for, and that money, as nearly as we can, will always be kept out bringing in interest.' " This was the statement of Mr. Gardner, president of the bank. He had been introduced to the parties as the president of the bank, and, when asked if the money would be kept invested, he answered, "That is my business, and I will"; that is, the business of the Arkansas Valley Bank, or Gardner as president of the Arkansas Valley Bank. The evidence nowhere discloses that at that time appellees, or either of them, knew that there was an Arkansas Valley Trust Company, and, if they had known it, they were inexperienced and knew nothing about what Gardner meant except what his statement indicated, that he, president of the Arkansas Valley Bank, would keep the money invested. Mr. Gardner died before the case was tried, and of course his testimony could not be had. We do not agree with the appellants that Miss McClenahan's testimony showed at that time that she knew anything about two institutions. All the business was done with the bank, or its officers, and the testimony nowhere discloses that anything was said by anybody as an officer of the Arkansas Valley Trust Company.

Appellants argue at length that the Arkansas Valley Bank was a banking institution and did not have authority to do what was done in this case, and, for that reason, it is not liable. This question of authority of the bank was discussed in the case of *Sullivan* v. *Arkansas Valley Bank,* 176 Ark. 278, 2 S. W. (2d) 1096, 57 A. L. R. 296. In that case it was earnestly contended that for the bank to undertake to do the things it there did would be *ultra vires,* and for that reason the bank would not be liable, and we there said: "That it made and published false statements about the condition of the mortgage company; that it induced these persons to invest their money in worthless bonds when they knew they were worthless, and the suit is based on torts, so far as the bank is concerned, and it has been many times held that the doctrine

of *ultra vires* does not apply to a corporation's torts, but only to its contracts or contractual relations. Suits are maintained against corporations every day, and recovery is had for negligence, willful wrong, and all kinds of torts, and it has never been contended, so far as we know, that a corporation was not liable for these things because it was *ultra vires.* * * * Is the doctrine of *ultra vires* applicable to this case? The doctrine of *ultra vires* has never been held to apply to a corporation's torts, but is limited to its contractual relations. 'Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application.'' *Sullivan* v. *Arkansas Valley Bank,* 176 Ark. 278, 2 S. W. (2d) 1096, 57 A. L. R. 296.

We also said in the above case, "In *Bissell* v. *Mich. So. & N. I. R. Co.,* 22 N. Y. 258, a leading case, the court held that corporations, like natural persons, have the power and capacity to do wrong. The corporations have no right to violate their charters, but they have the capacity to do so, and are to be bound by their acts where a repudiation of such acts would result in manifest wrong to innocent parties; that the plea of *ultra vires,* according to its just meaning, imports not that the corporation could not make the unauthorized contract but that it ought not to have made it; that such a defense is not to be entertained where its allowance will do a great wrong to innocent parties; that, although corporations cannot rightfully do any act not authorized by their charters, yet such acts when done are to be regarded as the corporation's acts; and if in the course of their performance others are injured by the negligence of the officers of the corporation, the corporation is responsible; such liability arising from the duty which every railway company owes to persons within its cars with its consent.''

We have carefully read and considered the entire testimony in this case and have reached the conclusion that the McClenahans, appellees here, were dealing with

the Arkansas Valley Bank, that the officers of the Arkansas Valley Bank committed the wrongs complained of by them. They had access to this money and security because they were officers of the Arkansas Valley Bank, and we think the testimony clearly shows they are liable. There is some conflict of testimony as to whether the vice-president, M. M. Hayes, had authority to sign the checks of the McClenahans. Hayes himself testified that he had authority, he also testified, however, that he embezzled $12,000 or $13,000 of their money, he also pleaded guilty to stealing the money of the bank and to forgery. Mrs. McClenahan and Miss McClenahan both testified that he did not have authority to sign their names to checks. All the authority he ever had was to invest their money in interest-bearing securities, and he had this authority because he was vice-president of the Arkansas Valley Bank. It is true that Miss McClenahan talked to him and not to others, because she knew him, but this does not signify that she was dealing with him personally or that she ever made him her agent. Persons go to a bank to deal with a bank. It often happens that they would prefer to talk to a particular officer of the bank, but this does not make that particular officer their agent, and we therefore conclude that the chancellor was correct in finding that Hayes did not have this authority.

It would serve no useful purpose to extend this opinion by reviewing all the testimony and authorities presented by the parties. We have carefully examined the entire record, and reached the conclusion that the chancellor's findings are correct, and supported by a preponderance of the evidence. The decree is therefore affirmed.