## BANK OF HATFIELD *v.* CHATHAM.

Opinion delivered October 29, 1923.

1. BANKS AND BANKING—LIABILITY TO DEPOSITOR.—A general deposit of money in a bank passes the title to the bank and establishes the relation of debtor and creditor between the bank and the depositor, and the bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposits, and becomes liable upon its refusal to do so.

2. BANKS AND BANKING—LIABILITY TO DEPOSITOR—INSTRUCTION.— An instruction that, when a depositor places his money in a bank, it can be paid out and charged to his account only upon authority from the depositor, is not open to the objection that, in order to relieve the bank from liability, the depositor must have in person given his check or in person have authorized the bank to make the transfer.

3. BANKS AND BANKING—FORGED CHECKS.—Under Crawford & Moses' Dig., § 7789, a bank is not authorized to pay out a depositor's money on a forged check.

4. BANKS AND BANKING—LIABILITY TO DEPOSITOR—INSTRUCTIONS.— Where a depositor sued a bank for paying out his deposit on forged checks, and the bank contended that the money was loaned to one of its officers by plaintiff's authority, instructions which presented both theories to the jury *held* correct.

5. BANKS AND RANKING—STATEMENT OF DEPOSITOR'S ACCOUNT.—A bank depositor has a right to rely upon the correctness of his account as rendered to him by the bank, and is under no duty to make any other investigation, so long as the statements disclose nothing wrong with his account.

6. BANKS AND BANKING—STATEMENT OF DEPOSITOR'S ACCOUNT.—A notation in one of a depositor's statements that a portion of his deposit was drawing ten per cent. interest, when the bank had agreed to pay four per cent. was not notice to him that the bank had allowed another to withdraw such portion of his deposit.

7. BANKS AND BANKING—FORGERY OF CHECK—RATIFICATION.—Where a bank depositor's funds were withdrawn by means of a forged check signed by an officer of the bank, the mere fact that the depositor tried to get such officer to replace the money would not tend to show that he ratified the act or lost his remedy against the bank.

8. BANKS AND BANKING—BANK STATEMENT—PRESUMPTION.—A bank statement of a depositor's account makes a *prima facie* case in the depositor's favor and the burden is on the bank to show that the depositor authorized a bank official to withdraw his deposits.

9. TRIAL—ABSTRACT INSTRUCTION.—An instruction upon the theory that a bank depositor ratified the unauthorized act of a bank official in withdrawing his deposits, was properly refused where there was no evidence tending to prove a ratification.

10. BANKS AND BANKING—FORGED CHECKS—LIABILITY.—Where the testimony of a depositor made an issue of forgery by a bank officer in signing such depositor's name to checks and withdrawing his deposits, an instruction that when the bank paid out

money on checks bearing the depositor's name it did so at its peril if the checks were forged or the signature was unauthorized, was not erroneous.

11. BANKS AND BANKING—DEPOSITOR'S STATEMENT—BURDEN OF PROOF.—Where the statement of a depositor's account furnished by a bank officer shows a balance due for which he sues, the bank has the burden of showing that the depositor authorized the withdrawal of his money.

12. TRIAL—IMPROPER EVIDENCE—INSTRUCTION.—The introduction of improper testimony was cured by an instruction not to consider it.

13. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—Where, in a suit by a depositor against a bank for deposits paid on forged checks, plaintiff testified that he never authorized defendant's vice president to use his money, it was not error, on cross-examination of such vice president, to elicit the fact that he had in the same manner, taken from the bank a large sum of money belonging to other depositors.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

### STATEMENT OF FACTS.

R. B. Chatham brought this suit against the Bank of Hatfield to recover the sum of $1,580 which he had deposited with the bank and which the bank refused to pay him on demand therefor.

The bank defended on the ground that the money had been withdrawn from it by the authority of the plaintiff.

The plaintiff in 1920 opened an account with the defendant, and, between that time and the occurrences leading up to this litigation, his total deposits amounted to $2,400. At the time he opened his account, the bank agreed to pay him 4 per cent. on daily balances, and, in the early part of 1921, the plaintiff had on deposit in the bank something more than $2,000.

L. H. Johnson had been cashier of the bank, but his duties had been changed to that of vice-president early in 1921, and he continued in that position during the period of transactions involved in this suit. Johnson worked on the outside, and his main duties were to collect special accounts due the bank. At stated periods

the bank furnished Chatham a statement of his account, and the statement rendered on the first day of July, 1921, shows that he had a ·balance in the bank of $1,906.52. On the 18th day of February, 1921, L. H. Johnson, as vice president of the bank, drew a check for· $1,000, signed Chatham's name to it, and charged the amount thereof to the account of Chatham. At the same· time Johnson executed a note payable to Chatham's order for this amount, and signed the names of his brothers thereto as sureties, and placed the note among · the private papers of Chatham in the bank. He then withdrew from the bank $1,000 of Chatham's .deposit. On the 7th .day of April following, he withdrew $300 from the bank in a similar manner. On the 27th ·day of ·June, 1921, in the same manner he withdrew $200 from the bank, making the total taken by him from the bank and charged to Chatham's account, $1,500.

Chatham was a witness for himself. According to ·his testimony, none of the· withdrawals made by Johnson were shown in the statements received by him from· the bank. There was nothing in the statements· to· indicate that his money had been withdrawn from the bank by Johnson, and he did not know anything about the matter until it had been done. On the 25th day of ·August, 1921, Chatham received a letter from Johnson· in which he admitted that he had used $1,500 of Chatham's money in the bank. · This was the ·first information that Chatham had that his money had been withdrawn from the bank by Johnson. He made an investigation of the matter, and made a demand of his deposit by drawing a check upon the bank for the balance thereof. The bank refused payment on the check, and on December 12, 1921, Chatham sued it to enforce payment. Johnson withdrew the $1,500 by signing Chatham's name to the checks on the bank. This was done without the knowledge or consent of Chatham.

L. H. Johnson was a witness for the defendant. He admitted that he was vice president of the Bank

of Hatfield during the period of these transactions in the year 1921. He admitted that he made the statement of April 30, 1921, and sent it to the plaintiff, but stated that he was working for the bank on the outside during that year, and occasionally got out statements of customers of the bank. He admitted making the statement of July 1, 1921, and said that sometimes he would drop in the bank and help with the bookkeeping and work of that kind. He made other statements to Chatham of his account, and, in fact, made all the statements that Chatham received. The cashier permitted him to make these statements, and Johnson claimed that he had authority from Chatham to withdraw his money from the bank. This authority was given him verbally by Chatham in the early part of 1921, in order that Chatham might receive 10 per cent. interest on his deposits. Johnson withdrew the money of Chatham by signing the name of Chatham to the checks above referred to.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has appealed to this court.

*Norwood & Alley,* for appellant.

HART, J., (after stating the facts). The first assignment of error is that the court erred in giving instruction No. 1, which is as follows: "The court instructs the jury that when Chatham deposited his money in the bank, it became the property of the bank, and it could be paid out and charged to Chatham's account only upon authority from Chatham."

It has been repeatedly held by this court that no principle of law is better established than that a general deposit of money in a bank passes the title immediately to the bank and establishes the relation of debtor and creditor between the bank and the depositor. The bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposits, and becomes liable upon its refusal to do so. *Carroll County Bank* v. *Rhodes,* 69 Ark. 43; *Darragh Company* v. *Goodman,* 124

Ark. 532, and cases cited; and *Robinson* v. *Security Bank & Trust Co.,* 141 Ark. 414.

It is insisted, however, by counsel for the defendant that the instruction is misleading in the form in which it was given, and that it carries the inference that, in order to relieve the bank of liability, Chatham must have in person given his check or in person authorized the bank to make the transfer. Hence it is claimed that the instruction as framed denies the jury the right to find in favor of the bank if it should believe that Chatham told Johnson to use his money, and, acting on this authority, Johnson did use it by withdrawing the money on Chatham's check.

We do not think that the language of the instruction is fairly susceptible of this construction. It is a plain statement to the jury of the principles of law as uniformly held by this court.

The next assignment of error is that the court erred in giving instruction No. 2, which is as follows: "The name of Chatham forged to a check would not authorize the bank in paying the money on such check. So, in this case, if you believe from the evidence that Johnson forged Chatham's name to the checks, and the money was paid out on them, the bank would still be liable to Chatham for the money."

We think that the principles of law applied in this instruction are settled against the contention of counsel for the defendant by the case of *Bank of Black Rock* v. *B. Johnson & Son Tie Co.,* 148 Ark. 11, construing § 7789 of Crawford & Moses' Digest.

In that case the court said that, under this section, payment upon a forged check by a bank upon whom it is drawn is made at the bank's peril, and that the bank is not justified in charging it against the depositor's account, unless the latter is precluded from setting up the forgery or want of authority. But it is insisted by counsel for the defendant that there is no issue of forgery in the case. They claim that the instruction

amounts to telling the jury to find for the plaintiff if Johnson did use his money by the plaintiff's permission, if Johnson, in getting it, did so by signing the name of the plaintiff.

We cannot agree with counsel in this contention. According to the testimony of Chatham, he did not authorize Johnson to sign his name to the checks, nor did he authorize Johnson in any manner whatever to withdraw his deposit from the bank. In fact, Chatham positively denied knowing anything about the transactions in question until after they were over. He received his statements from the bank, and there was nothing in them to indicate that such transactions had been had.

The bank is dependent upon the testimony of Johnson that he did have verbal authority from Chatham to withdraw his deposits from the bank. This presented a clear-cut issue of fact to the jury, and the instruction in question submitted the law of the case as applicable to the plaintiff's testimony.

The court, at the request of the defendant, gave the following instruction:

"1. You are instructed that, if you believe from a preponderance of the evidence that the plaintiff had deposited funds in the Bank of Hatfield, and it was agreed between plaintiff and Lewis Johnson that Johnson might use such funds and pay him ten per cent. interest thereon, and that Johnson, pursuant to such agreement, caused plaintiff's account to be charged with amounts aggregating the amount sued for herein, and that Johnson personally used said amount, the Bank of Hatfield would not be liable to the plaintiff for the amount, and in that event your verdict will be for the defendant."

This instruction plainly presented to the jury the theory of the defendant.

The next assignment of error is that the court erred in giving instruction No. 3 at the request of the plaintiff, which is as follows:

"If statements were mailed to Chatham, showing the state of his account with the bank, Chatham had the right to rely upon the correctness of such statements, and was under no duty to make any other investigation or take any action so long as such statements continued to disclose nothing · wrong with his. account. And if one of these statements contained a showing that part of his money was drawing ten per cent. interest, without any showing that some. one other than the bank was using it, he had the right to assume that the bank still held his money."

Counsel for the defendant complains that this instruction is misleading. We cannot agree with the contention of counsel for the defendant that this instruction is one on the weight of the evidence. It was the duty of the plaintiff to examine the statements of his account rendered him by the bank, and he had a right to rely upon the correctness thereof. The court correctly told the jury that he was under no duty to make any other investigation, so long as the statements continued to disclose nothing wrong with his account. *Citizens' B. & T. Co.* v. *Hinkle,* 126 Ark. 266, and *Bank of Hatfield* v. *Clayton,* 158 Ark. 119, and cases cited.

Notwithstanding there was a notation on one of the statements· to the effect that $1,500 of his deposit was drawing 10 per cent. interest, it showed that the balance on deposit on July 1, 1921, was $1,906.52. Hence the mere fact that a part of his account was drawing 10 per cent. interest, instead of 4 per cent. interest, as originally agreed upon, was not notice to Chatham that other parties had withdrawn any of his deposit. So long as he was not in possession of facts tending to show that his money had been withdrawn by some one, he had a right to rely upon the statements sent to him by the bank.

The next assignment of error is that the court erred in giving instruction No. 5, which is as follows:

"Chatham would not be bound by the act of Johnson in drawing money from the bank on checks to which

his name was signed by Johnson without authority, nor would the fact that he tried to get Johnson to put the money back in the bank bind him if it had been drawn out without authority.''

We do not think the instruction is argumentative, as contended by counsel for the defendant, but are of the opinion that it is a correct declaration of the principles of law decided in the case of *Robinson* v. *Security B. & T. Co.*, 141 Ark. 414. Chatham did not wait an unreasonable time after finding out that Johnson had withdrawn his money from the bank without his consent before he demanded payment of the bank and instituted this suit. The mere fact that he tried to get Johnson to put the money back in the bank would not tend to show that he ratified Johnson's act or lost his remedy against the bank.

The next assignment of error is that the court erred in giving instruction No. 6, which is as follows:

''When the bank paid out money on checks bearing Chatham's name, it did so at its peril; and if the checks were forged or the signature unauthorized, it would still be liable to Chatham for the money.''

We do not think that this assignment of error is well taken. As said by counsel for the plaintiff, to take away from the jury the issue of forgery in this case would be to deny the plaintiff any right to recover at all. His testimony makes a plain case of forgery in withdrawing his deposits from the bank, and he had a right for the court to so tell the jury.

The next assignment of error is that the court erred in giving instruction No. 8, which is as follows:

''The court instructs the jury that the statements furnished to the plaintiff show conclusively that his money was on deposit in the bank, and these statements and the canceled checks show that he should still have $1,500 and the interest accruing on his daily balances from November 1, 1920, in the bank, unless it was drawn out and used by authority of the plaintiff. It

therefore devolves upon the bank to prove by a preponderance of the evidence that the plaintiff authorized Johnson to draw out and use the money and charge it to his account, and that Johnson did so under and by virtue of such authority."

We do not think that the court erred in giving this instruction. The undisputed evidence in the case shows that the statements of his account were furnished to Chatham by some officer of the bank, and that they were the only statements furnished him during the period of the transactions involved in this case. His statement of July 1, 1921, shows that he had a balance in the bank of $1,906.52. Therefore, under the principles of law above announced, this made a *prima facie* case in his favor, and the burden was on the defendant to show that the plaintiff had authorized Johnson to withdraw his deposits from the bank.

Other assignments of error are based upon instruction given at the request of the plaintiff, but we do not deem them of sufficient importance to set out the instructions and discuss them in detail. They were merely declarations of the principles of law as uniformly held by this court in the cases above cited and in others which might be cited.

It is next insisted that the court erred in refusing to give instruction No. 3 requested by the defendant, which is as follows:

"You are instructed that, if the plaintiff knew that Lewis Johnson was personally using his money, and made no complaint to any other officer or employee of the Bank of Hatfield, and was not holding the bank responsible for the amount, he will be deemed to have ratified the acts of Johnson, and, in that event, the bank would be liable, although plaintiff did not specifically authorize Johnson to use the money."

We do not think this assignment of error is well taken. The principal issue in the case was whether or not Chatham authorized Johnson to withdraw his

deposits. He testified unequivocally that he did not in any manner authorize Johnson to withdraw his deposits from the bank, and that he never knew anything about it until after it was called to his attention on the 26th day of August, 1921. The statement sent him by the bank on the first of July, 1921, showed that he had on deposit in the bank over $1,900, and the transaction in question took place before that time.

It is true that Chatham, after being notified that his deposits had been withdrawn by Johnson, made an investigation, and, after ascertaining its truth, demanded payment from the bank. It is also true that he tried to get Johnson to return the money to the bank, but this in no sense constituted a ratification of Johnson's acts. No evidence is introduced by the bank tending to show a ratification on the part of Chatham. Johnson is the principal witness for the defendant, and he states positively that he had verbal authority from Chatham to withdraw his money from the bank. As above stated, this made a clear-cut issue of fact between the parties, and there is not sufficient evidence upon which to predicate an instruction on ratification after Chatham found out that his money had been withdrawn from the bank by Johnson without his authority.

It is next insisted that the court erred in allowing Chatham to testify that Johnson told him on the 27th of September, 1921, that, if he would give him a little time, he would go to Fort Smith and get the money for the plaintiff.

It is insisted that Johnson had no connection with the bank after September 15, 1921, and that Johnson and the bank are so closely associated in the matter that it would be hard for the jury to distinguish between the wrong of Johnson and that of the bank. Therefore it is insisted that what he had said after he had severed his connection with the bank was necessarily prejudicial to the rights of the latter.

Several pages of the transcript are devoted to recitations of the objections made by counsel and responses of the court thereto. It seemed that the court at first admitted the testimony, thinking that the record showed that Johnson was still connected with the bank when the conversation between Chatham and Johnson objected to occurred. The court, from the beginning, stated that the declarations of Johnson after he had left the bank could not be considered as evidence against it. Finally the court sustained an objection to the testimony for the time being. It was meant by this that the testimony would be admitted if it was subsequently ascertained that Johnson was vice president of the bank at the time he made the statement. No effort was made thereafter to introduce the testimony. Hence we do not think that any prejudice could have resulted to the defendant.

It is next insisted that the judgment should be reversed because the court allowed Johnson to be asked, on cross-examination, if he had not taken $2,000 of old man Chatham's money. The witness answered in the negative. Prior to this time the witness had stated, on cross-examination, without objection, that, during the year 1921, he had taken from the bank money of customers to the amount of $10,000 in the same way that Chatham claimed that he got his money.

The court admitted the testimony as competent to show that he was taking out money of other people as a circumstance to strengthen or weaken his testimony as a witness. We think the court was right in holding that the testimony was admissible for this purpose. The honesty of the witness was in question, and the fact, if true, that he had been guilty of taking other people's money out of the bank without their consent and using it, during the period of time involved in this case, would tend to impeach his character and discredit him as a witness. *Hollingsworth* v. *State,* 53 Ark. 387.

The testimony as to whether he had taken the money of Chatham tended directly to establish or disestablish the principal issue in the case, and was therefore competent.

Finally, it is insisted that the court erred in making certain statements in the presence of the jury with regard to the testimony of Johnson. Johnson, while on the stand, admitted sending out the statements of Chatham's account to him while he was vice president in 1921, but claimed that he had no authority to do so. In this connection he testified that Chatham was holding him responsible for the withdrawal of his deposits. The circuit court, in discussing this question, among other things, stated as a fact to the jury that it was a paper of the bank made by the acting vice president. Objections were made to this statement of the court, and he repeated that he understood Johnson to say that he was acting as vice president of the bank. Upon the objection being renewed, the court said that it would take it all back if Johnson did not swear it at least four or five times. Upon objections being pressed to its action, the court asked the jury not to consider it at all. We think this action of the court would eliminate any prejudice that might have resulted from the remarks.

. Moreover, an examination of the record will show that Johnson had sworn as many as four or five times that he was vice president of the bank during the period in question in this case, and no attempt was made to contradict his evidence in this respect. The only contention was that he was assigned to special duties by the bank and did not have authority to send out the statements to Chatham of his account.

It is not denied, however, that he was permitted by the bank to do so. It does not claim that it sent them out by any other officer of the bank or authorized any of its employees to do so. Hence this assignment of error is not well taken.

We find no reversible error in the record, and the judgment will be affirmed.