SLOSS *v.* TAYLOR.

Opinion delivered January 12, 1931.

*Barber & Henry* and *Troy W. Lewis,* for appellant.

*Robinson, House & Moses* and *Harry E. Meek,* for appellee.

HART, C. J. A. W. Sloss prosecutes this appeal to reverse a decree of the chancery court dismissing a complaint filed by him against Walter E. Taylor, State Bank Commissioner, to compel the allowance of a set-off upon a note due by him to the American Exchange Trust Company, which had been placed in the hands of said bank commissioner for liquidation.

According to the allegations of the complaint, A. W. Sloss was the president of the Southern Life Insurance

Company, and, in compliance with a statute of the State, had on deposit with the State Insurance Commissioner of Arkansas certain certificates of deposit in the American Exchange Trust Company in the aggregate sum of $5,100. On the 17th day of November, 1930, the American Exchange Trust Company elected to exercise the five days' suspension period allowed under § 717 of Crawford & Moses' Digest. On the same day, the State Insurance Commissioner demanded of the Southern Life Insurance Company that it substitute other securities for the certificates of deposit of said bank on deposit with the insurance department. In compliance with the demand of the Insurance Commissioner, A. W. Sloss took an assignment of the certificates of deposit of the bank in the sum of $5,100 and deposited with the Insurance Commissioner his own private securities in place thereof. The exchange of the securities was made in due course of business with the approval of the Insurance Commissioner on the 19th day of November, 1930, being a date two days after said bank had elected to exercise the five days' suspension rights given it under the statute. A. W. Sloss was indebted to the bank in the sum of $16,100, balance due on a certain note given by him to the American Exchange Trust Company. The note was past due, and A. W. Sloss offered to pay it, but demanded that he be allowed to set off the certificates of deposit aforesaid aggregating $5,100. The State Bank Commissioner, who took charge of the bank at the conclusion of the five days' suspension period and who is still in charge of its affairs as an insolvent bank, declined to accept said certificates of deposit as a credit and part-payment of the note from plaintiff to the American Exchange Trust Company.

The chancery court sustained a demurrer to the complaint of the plaintiff praying for the allowance of said set-off and, upon the plaintiff's refusal to plead further, dismissed his complaint for want of equity.

The correctness of the decision of the chancery court depends upon the construction to be placed upon § 717

of Crawford & Moses' Digest. The part of the section necessary to a determination of the issues raised by the appeal reads as follows:

"A bank shall be deemed insolvent within the meaning of this act upon the existence of the following facts: (1) If it suspends payment of checks drawn against deposits payable on demand and fails to resume payment thereof within five days; provided, that any clearing-house association or any other similar association of banks or bankers, by and with the consent and approval of the bank commissioner, may agree to suspend payment of demand obligations for such length of time as may be deemed proper when such action is deemed necessary or proper by a majority of such banks or bankers forming such association, in order to protect the stockholders and creditors of any bank or banks, or to avert financial panics."

In the construction of this statute, this court has held that where a bank becomes insolvent, a depositor who is indebted to the bank may offset the amount of his deposit in an action by the receiver or assignee to recover on the indebtedness due the bank. *Steelman* v. *Atchley*, 98 Ark. 294, 135 S. W. 902, 32 L. R. A. (N. S.) 1060; *Funk* v. *Young*, 138 Ark. 38, 210 S. W. 143, 5 A. L. R. 79; *Hughes* v. *Garrett*, 150 Ark. 404, 234 S. W. 265; and *United States Fidelity & Guaranty Co.* v. *Maxwell*, 152 Ark. 64, 237 S. W. 708. In the case last cited, it was held that where a bank commissioner, as receiver of an insolvent bank, sued a guaranty company on the fiduciary bonds of two of its employees, defendant was not entitled to offset the amount of a deposit it had in the bank which it had guaranteed the depositor and had paid to him after the bank's insolvency, taking an assignment of the depositor's claim. The reason was that to permit a debtor of an insolvent bank to offset a claim assigned to it after the bank passed into the receiver's hands would be allowing a preference against an insolvent corporation, which is forbidden by § 1798 of Crawford & Moses'

Digest. Thus it will be seen that the general rule in this State is that the right to set-off against an insolvent bank is governed by the state of facts existing at the time of insolvency and not by the conditions that might be created afterwards. See also *Scott* v. *Armstrong,* 146 U. S. 499, 13 S. Ct. 148; and *Yardley* v. *Philler,* 167 U. S. 344, 17 S. Ct. 835.

The effect of these decisions above cited is that the State Bank Commissioner is the statutory assignee of the bank, and, like a receiver of an insolvent bank, takes the funds in the plight in which they were held by the bank immediately prior to his appointment. See also *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 16 S. Ct. 502.

Under § 1798 of Crawford & Moses' Digest, which forbids preference by insolvent corporations, the moment a bank or other moneyed corporation becomes insolvent the rights of all its creditors attach equally to all its assets, and whoever takes an assignment of its certificates of deposit afterwards, being indebted to such bank, takes them subject to this right of all the creditors to share equally in the assets of the bank. The statute intends to secure to the creditors collectively and exclusively all the assets of the corporation the moment the insolvency takes place. When a receiver is appointed or the bank commissioner takes possession of the assets of the bank under the statute, there is a conclusive presumption of insolvency.

In the case at bar, the bank suspended business for five days, as it had a right to do under § 717 of the Digest. After the bank had suspended business and closed its doors, the plaintiff, A. W. Sloss, took an assignment of certificates of deposits of said bank in the sum of $5,100, and, by this suit, attempts to use them as a set-off to a note which he owed the bank. Before Sloss procured an assignment of the bank certificates, the bank held the note against him; and, if the bank was insolvent, the note belonged equally to all the creditors of such bank and

the certificates of deposit could not be used as a set-off in whole or in part by Sloss in the payment of his own debt to the bank. If Sloss could be allowed to purchase or receive certificates of deposit of an insolvent bank and with them satisfy a debt of his own to the bank and take from the assets of the bank this amount, then the policy of the statute forbidding preferences and intending to secure equality between all the creditors of insolvent corporations would be defeated. It is not claimed that the bank was not insolvent in fact at the time it suspended payment and closed its doors for five days under the provisions of § 717 of the Digest. When the bank closed its doors and suspended business for five days under the statute, this of itself was sufficient evidence to warrant a finding of insolvency of the bank, when taken into consideration with the further fact that the bank never opened its doors and went into liquidation as an insolvent bank afterwards. *Gillett* v. *Moody,* 3 N. Y. 479; and *Markson* v. *Hobson,* 2 Dill. 330.

In the latter case it was held that a banker who allows his drafts to go to protest, suspends payment and closes his doors against depositors, proclaims to the world that he is insolvent, and a creditor who, with knowledge of these facts, receives payment of his debt secures an illegal preference, and is liable to the assignee for the amount thus received. In *Dodge* v. *Mastin,* 17 Fed. 660, it was held that the ordinary acceptation of the term "insolvent," when applied to a bank, means "inability to meet its liability in the usual course of business." The principle is that, "where there is a statute prohibiting preferences or assignments after insolvency, the date of insolvency sets the time, and claims purchased thereafter cannot be set-off regardless of the date when a receiver is appointed." *Miller* v. *Audenried,* 67 N. J. Eq. 252, 57 Atl. 1076; affirmed 68 N. J. Eq. 658, 60 Atl. 1134.

It follows that the decree of the chancery court was correct, and it will be affirmed.