TAYLOR *v.* DIERKS LUMBER & COAL COMPANY.

Opinion delivered June 8, 1931.

938

*Steel & Edwards,* for appellant.

*Abe Collins* and *Lake, Lake & Carlton,* for appellee.

HART, C. J., (after stating the facts). It has been uniformly held by this court that a general deposit of

money in a bank passes the title immediately to the bank and establishes the relation of debtor and creditor between the bank and the depositor. The bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposit and becomes liable on its refusal to do so. *Himstedt* v. *German Bank,* 46 Ark. 537; *Carroll County Bank* v. *Rhodes,* 69 Ark. 43, 63 S. W. 68; *Bank of Hatfield* v. *Chatham,* 160 Ark. 530, 255 S. W. 31; and *Arkansas Valley Bank* v. *Kelley,* 176 Ark. 387, 3 S. W. (2d) 53. This rule of law was also recognized and stated in *Darragh Company* v. *Goodman,* 124 Ark. 532, and other Arkansas cases were cited in support of the general rule.

The court also said that it was well settled that a bank receiving a draft for collection merely is the agent of the drawer or forwarding bank and takes no title to the paper or the proceeds when collected but holds same in trust for remitting it. The difference is that, when a bank receives a general deposit, it takes the title in itself and is in no sense the agent of the depositor for collecting the amount of the check or draft deposited. From the time of the delivery of the draft or check from the customer to the bank, the latter became the owner of the check. It might make any disposition of it that it saw fit. The bank becomes absolutely the owner of it, subject only to the condition that, in case the check or draft is dishonored and not paid, the depositor would become liable to the bank on his indorsement made on the check or draft when deposited. In such cases, the bank is collecting the check or draft for itself as owner and not as agent of the owner as in cases where the check or draft is deposited for collection. This difference is clearly pointed out in *Darragh Company* v. *Goodman,* 124 Ark. 532, 187 S. W. 673. See also, as establishing the same rule, *Burton* v. *United States,* 196 U. S. 283.

As said by Mr. Justice Davis in *Bank of the Republic* v. *Millard,* 10 Wall. (U. S.) 152:

"It is an important part of the business of banking to receive deposits, but when they are received, unless

there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lundhurst and Campbell, in the House of Lords, in the case of *Foley* v. *Hill,* and they all concurred in the opinion that the relation between a banker and customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authority is to the same effect."

In the present case, when appellee, through its agent, carried the cash and checks to the bank and the bank received it as a deposit and placed the amount to the credit of appellee in the pass book, the relation of creditor and debtor subsisted between them and not that of principal and agent. The relation was in legal effect a transfer of the money and checks by the customer to the bank upon an implied contract on the part of the cashier to repay the amount of the deposit upon the checks of the depositor.

The bank acquired title to the money and checks on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business. The transaction was completed when the customer tendered the cash and checks to the bank for deposit, and the president of the bank received them without any restriction. When the president credited the customer's pass book with the amount of the deposit, the title passed to the bank; and the items constituting the deposit were not again subject to the control of the customer.

Thus, it will be seen that the relation of debtor and creditor is a voluntary one, and a general deposit made with a bank is a contractual relation. Like other contracts, it is necessary that there should be a meeting of the minds of the parties, and the assent of both parties is essential to a deposit to create a privity of contract between the bank and the depositor. The relationship cannot end without the consent and knowledge of both parties. In our opinion it follows from an application of this well-known rule that no secret intention on the part of the officers of the bank could change the transaction from a general deposit to a deposit in trust. It is manifest that the transaction, considered in the light of what was done by the parties themselves, without considering the secret mental reservation on the part of the officers of the bank constituted the transaction a general deposit. Such being the nature and character of the deposit, it cannot be changed by any secret mental reservation on the part of one of the parties.

But it is contended that the relation is changed by the notice on the pass books which was copied in our statement of facts. We do not think so. Reference to the language used in the notice will show that it does not in any way change the character of the contract between the parties. If the checks, as we have held, were passed to the credit of the bank unconditionally and without any special understanding, then the title to the checks was in the bank, and the only liability of the customer was on his indorsement, if the bank on which the check was drawn did not honor it. The liability of the customer as indorser was the same as the liability imposed upon him by the terms of the notice. It will be remembered that the agent of appellee testified that appellee indorsed all of the checks which were deposited by him for it. *Burton* v. *United States,* 196 U. S. 283.

The same principle is set forth in *Taft* v. *Quinsigamond National Bank,* 172 Mass. 363. In that case the court said:

"So, when, without more, a bank receives upon deposit, a check indorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker."

As we have already seen, the checks were placed to the credit of the customer on the pass book without any special understanding between the parties. The custom of the bank was to forward such checks for collection as for itself, and the customer was only liable on its indorsement if payment was not made.

Counsel for appellee also seek to uphold the decree by invoking the general rule in a case note to 20 A. L. R. 1206, to the effect that acceptance of general deposits by a bank hopelessly insolvent constitutes a fraud such as will entitle the debtor to rescind the contract and recover back the deposit or give him a preferential claim or create a trust *ex maleficio*.

We do not think the principle there announced has any application because this question is settled by our statute. Acts of 1927, p. 297. The Legislature of 1913 created the State Bank Commission and provided rules and regulations for the organization of banks, the conduct of their business, and their liquidation when they became insolvent. The object of the statute was to protect the public in its dealing with banks and to provide a fair, just and expeditious manner of winding up their affairs when they became insolvent. The plain purpose of the act of the Legislature of 1927 above referred to was to define the relation between creditors of banks, in charge of the State Bank Commissioner and to set out how they should be settled with. We have held that the State Bank Commissioner is the statutory assignee of an insolvent bank and, like a receiver, takes the funds in the same condition they were held in by the bank immediately prior to his taking possession. *Sloss* v. *Taylor*, 182 Ark. 1031, 34 S. W. (2d) 231.

We have already placed a liberal interpretation upon the provision of the act of 1927, above referred to, to promote its plain purpose of defining the relation of the creditors of the bank with the State Bank Commissioner when he takes charge of it as an insolvent bank. The evident purpose of the statute was to define the relation of the creditors of the bank as of the formal date of its insolvency, which was the date when it was taken charge of by the State Bank Commissioner under the statute. In the case of *Taylor* v. *Whaley, ante* p. 598, it was held that the rule as to preference to the effect that in case public funds are acquired by a bank unlawfully and wrongfully, the beneficial depositor would be entitled to recover same in preference to general creditors of the bank, was abrogated by the enactment of act 107 of the Acts of 1927, which provides that the beneficiary of an express trust in writing, signed by the bank, as distinguished from a constructive trust, a resulting trust or a trust *ex maleficio,* shall have preference over general creditors; and also provides that all creditors not classed as secured or prior creditors, including the State of Arkansas, and any of its subdivisions, shall be general creditors thereof.

This same rule would apply to private creditors because there is nothing in the statute to indicate otherwise. While § 1 of act 107 of the Acts of 1927, purporting to amend our State Bank Act, is somewhat long and involved, as construed by the court, there can be no preference or trust relations between the creditors and the insolvent bank except as allowed by the statute. We have carefully considered the language of the statute, and find that there is nothing in it which would warrant us in allowing the claim of appellee herein as a preferred claim or to show that there was any trust relation, within the meaning of the statute when the deposit was made.

It follows, therefore, that the decree must be reversed, and the cause will be remanded with directions to dismiss the complaint of appellee, plaintiff in the court below, for want of equity. It is so ordered.