WASSON *v.* GIBSON.

4-3631

Opinion delivered December 10, 1934.

*Roy Penix, Basil Baker* and *Foster Clark,* for appellant.

*H. L. Ponder, W. P. Smith, W. E. Beloate, W. A. Jackson, Charles Frierson, Jr.,* and *Chas. D. Frierson,* for appellees.

JOHNSON, C. J. Appellant, State Bank Commissioner, in charge of the liquidation of the Twin City Bank of Walnut Ridge, Arkansas, a defunct State bank, instituted four separate suits against appellee in the circuit court of Lawrence County. The first suit sought recovery upon three dishonored drafts which were drawn by appellee against various and different persons on January 14, 1933, and aggregated $12,300.

The second suit sought recovery of $3,655.54 same being money paid to appellee by Mrs. L. M. Gibson for the purpose of retiring a debt owed by her to the Twin City Bank, but which was never paid over to the bank by appellee.

The third suit sought recovery upon a partnership note executed by appellee and one Fred Mitchell in favor of the Twin City Bank for the sum of $3,500.

The fourth suit sought recovery of $8,075, same being a stock assessment against appellee on account of his ownership of three hundred twenty-three shares of capital stock in the Twin City Bank at the time of its failure on January 18, 1933, of the par value of $25 per share.

Appellee answered each complaint by specific denials of the material allegations thereof and pleaded specially as follows: That the Twin City Bank was the successor of the Bank of Hoxie, and that their identity was the same except for name and location; that prior to February, 1929, the Bank Commissioner of the State of Arkansas demanded and required appellee and other stockholders in the Bank of Hoxie to take from the assets of said bank a large amount of negotiable paper; that, pursuant to said requirement and demand, appellee on February 16, 1929, purchased from the American Southern Trust Company of Little Rock, Arkansas, a certain note signed by the Bank of Hoxie for the sum of $3,716.85; that, pursuant to the same requirement, appellee was compelled to purchase from the same bank another note

signed by the Bank of Hoxie for the sum of $9,359.04; that, pursuant to the same requirement, he was compelled to purchase from the same bank another note signed by the Bank of Hoxie for the sum of $5,919.41; that, pursuant to the same requirement, he was compelled to purchase from the National Bank of Commerce of St. Louis, Missouri, a note signed by the Bank of Hoxie for the sum of $15,000; that, pursuant to the same requirement, he was compelled to purchase from the National Bank of Commerce, St. Louis, Missouri, another note signed by the Bank of Hoxie for the sum of $4,185.95. That each of said notes so purchased was assigned by the respective holders thereof to appellee, and that he should be permitted to use as a set-off all said notes to the extent of the principal and interest thereof.

As an additional set-off, appellee alleged the ownership of certain deposits in the Twin City Bank aggregating $8,051.23; and as an additional off-set appellee alleged his official capacity in said Bank of Hoxie and the Twin City Bank, to-wit: president, and that he should be allowed compensation for his services as such. On motion of appellee, the separate suits were consolidated for trial, and transferred to equity for this purpose. Amendments to the complaints, answers and cross-complaints were filed, but it is not necessary to set them out in further detail.

The chancellor appointed a master to state the account between the parties, and after hearing testimony he rendered the following statement:

"The master reported:

"That plaintiff is entitled to a judgment against the defendant, John K. Gibson, for the following amounts:

"1.  Stock assessment ........................................$ 8,676.61
         (with interest at 6 per cent. from
         April 15, 1934)

"2.  Unpaid drafts ................................................ 12,300.00

"3.  L. M. Gibson indebtedness ........................ 4,248.94
         (with interest allowed to January
         18, 1933)

"4.  Gibson & Mitchell ......................................... 3,364.00

"That upon his cross-complaint defendant is entitled to set-off as against the above amounts as follows:

"1. No set-off as against stock assessment. ·

"2. Gibson is entitled to set-off as against all other amounts as follows:

"Salary for three years at $75 per month.... $2,700.00
"Personal account in bank............................................. 883.63
"Hoxie Gin Company account in bank............ 302.65
"Expenses paid for benefit of the bank...... 613.53
"One-half of amount due on notes of bank
    assigned to Gibson & Lester by Ameri-
    can Southern Trust Co., and National
    Bank of Commerce .......................................................$19,892.87

"Total .............................................................................................$24,392.68"

Both appellant and appellee filed exceptions to the account thus stated, and upon hearing before the court the master's account was modified as follows: Appellee was allowed as a set-off guardianship deposits in the Twin City Bank in the sum of $2,215.11 (which was consented to by appellant), and appellee was allowed to set-off one-half the purchase price of the notes or bills payable which he retired from the Little Rock and St. Louis banks as against his stock assessment and liability.

Appellant appeals from that part of the decree adverse to his interest, and appellee likewise prosecutes a cross-appeal.

Appellant contends that the chancellor erred in allowing appellee credit for $19,892.87, same being one-half the total expenditure to the Little Rock and St. Louis banks in February, 1929, with accrued interest thereon, which was in compliance with the demands of the State Banking Department; and in the cross-appeal appellee contends that the court erred in refusing to allow him credit for the full amount paid to said Little Rock and St. Louis banks. The facts surrounding this transaction are as follows: Prior to February, 1929, the State Banking Department conceived that the Bank of Hoxie was in an insolvent and failing condition, and the Commissioner thereupon peremptorily demanded of appellee, who was president of said bank, and a Mr. Lester, a

stockholder therein, that all doubtful and worthless as-
sets be charged off the books of said bank, and, looking
to this end, that the bills payable to the Little Rock and
St. Louis banks be retired, and, if this were not done,
that the Bank of Hoxie would be closed and liquidated.
In obedience to this demand, the bills payable in the Lit-
tle Rock and St. Louis banks were retired by appellee
and Mr. Lester, jointly, and the holder banks assigned
said notes so retired to appellee and Mr. Lester. Section
718, Crawford & Moses' Digest provides:

"On becoming satisfied that the capital stock of any
bank is impaired, the Commissioner shall require the pro-
prietors, stockholders or officers to pay a sufficient sum
to restore the capital or to execute to the commissioner
for the use of the creditors a bond for such sum as the
commissioner may require, with good and sufficient sure-
ties, to be approved by him, conditioned that all just
debts and liabilities will be paid in full within a time
fixed by the Bank Commissioner not exceeding twelve
months; and if they fail to restore the capital or give such
bond within a time to be named by the Commissioner, he
shall take possession of the property and business of such
institution, and retain such possession until business is
resumed or its affairs be finally liquidated."

This section of the banking act was full authority
to the Bank Commissioner to make peremptory demands
upon the officers and stockholders of the Bank of Hoxie
to restore its impaired capital for the benefit of deposi-
tors and creditors of said bank. Therefore, the Bank Com-
missioner's demand for restoration does not appear to
have been without authority of law or arbitrarily made.
Neither can we agree that, in complying with this de-
mand of the State Bank Commissioner, appellee could
have the notes so retired assigned to himself, and there-
after hold the same as obligations of the Bank of Hoxie
or assert them as valid claims after the bank passed into
liquidation. If such were determined to be the law, it
would nullify and destroy the only purpose of the bank-
ing act. Primarily, the purpose of the banking act was
for the protection of depositors and other creditors. If
appellee's contention was sustained, the only effect of

the act and the Commissioner's requirements thereunder would be to change the name of the bank's creditors, which would not restore the impaired capital to the extent of one penny. Certainly, the Legislature had no such intent or purpose in passing the banking act, and such intent and purpose can not be gathered from the language appearing therein.

Our conclusion is therefore that the retirement by appellee of the outstanding bills payable of the Bank of Hoxie, same being done under the peremptory demand of the State Bank Commissioner to restore the impaired capital of said bank, extinguishes the debt of the Bank of Hoxie, and that the notes, although duly assigned, can not now be asserted as a set-off to his liability to appellant.

Appellant next urges that the master and chancellor erred in allowing appellee credit for $2,700 for salary as an officer of the Twin City Bank—same being salary of $75 per month for three years immediately prior to the closing of said bank. A preponderance of the testimony shows that appellee received a salary for some years from these banks, but that about the year 1925 he voluntarily refused to accept credit for this monthly salary because, as appellee expressed it, "things got so darn bad he just quit taking credit for it." This item should be treated as appellee treated it. It would be inequitable and unjust to depositors and creditors of this insolvent bank to now permit appellee to claim his salary against their just demands. Appellee was president of this bank all along, and issued or caused to be issued statements purporting to show its total liabilities and credits, and to now permit him to assert a secret and withheld demand against the bank would be giving him an unfair and unjust advantage over the other creditors. Appellee, president of the bank as he was, should have promptly, timely and openly asserted his demands against this bank, thereby giving prospective depositors and creditors due notice thereof, and, since he deliberately failed to do so, he has no right to complain when his secret demand is denied, thus leaving him and the depositors and credit-

ors of the bank in the same position when the bank closed its doors for business. This item should be denied.

Appellant next contends that the master and court erred in allowing appellee credit for the whole of the item of $613.53 as expenses paid by him for the benefit of the bank. Without discussing this item in detail, it may be said that the court erred in allowing $86 of this item because it was expended for an unlawful purpose, therefore no court of justice should lend its support towards the enforcement of such unlawful demand. This item is therefore reduced to $527.53.

The trial court also erred in allowing any of the credits allowed appellee as set-offs against his liabilities on his bank stock assessments. In the recent case of *Lange* v. *Taylor*, 184 Ark. 105, 40 S. W. (2d) 781, we restated the applicable rule as follows:

"Notwithstanding our statute on set-offs is a liberal one, it is readily apparent from the language of the statute fixing the liability of the stockholder of an insolvent bank for all contracts, debts and engagements of such bank to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock, that it was not the intention to permit the set-off of the failed bank's indebtedness to such stockholder."

Upon the contention in the cross-appeal that appellee should be permitted to set-off certain deposits acquired by him subsequent to the bank's failure, but little need be said. The rule is well established in this State that the right to set-off against an insolvent bank is governed by the state of facts existing at the time of insolvency and not by subsequently created conditions. *Sloss* v. *Taylor*, 182 Ark. 1031, 34 S. W. (2d) 231.

Appellee's acquired deposits now asserted in his cross-appeal fall within the prohibition of the rule just quoted.

On the basis of the conclusions stated the account should be re-stated as follows:

Appellant should be given judgment against appellee for:

His overdraft account as allowed by the master
and approved by the court...............................$12,300.00
L. M. Gibson indebtedness as allowed by master
and approved by the court.................................. 4,248.94
Gibson & Mitchell note as allowed by master
and approved by the court.................................. 3,364.00

Total .........................................................................$19,912.94

Appellee should be permitted to set-off against the above items the following:

Personal account in Twin City Bank..........................$    883.63
Hoxie Gin Co. account in Twin City Bank...........    302.65
Expenses paid for Twin City Bank..........................    527.53
Guardianship account in Twin City Bank...........  2,215.11

Total .........................................................................$ 3,928.92

The balance due appellant on the above items after allowing appellee all legal and equitable set-offs is $15,984.02.

To this should be added appellee's stock assessment as allowed by the master and approved by the court of $8,676.61 which item is not subject to set-off or abatement.

For the errors indicated, the cause is reversed, and remanded with directions to enter a decree in conformity to this opinion.

BAKER, J., disqualified and not participating.