DIERKS TELLER WINDOW OF HORATIO STATE
BANK *v.* HUNTER.

5-379                                                        268 S. W. 2d 16

Opinion delivered May 24, 1954.

*Royal L. Coburn, John L. Cecil* and *Hardin, Barton, Hardin & Garner,* for appellant.

*Steel & Steel* and *Shaver, Tackett & Jones,* for appellee.

GEORGE ROSE SMITH, J.    This dispute centers upon the question of whether the appellee, W. J. Hunter, had a deposit of $1,200 in the Bank of Dierks when it was found to be insolvent.    By an arrangement with the Federal Deposit Insurance Corporation (FDIC) the liabilities of the insolvent bank were assumed by the appellant, Horatio State Bank.    This suit was brought by Hunter to recover the sum of $1,200 after the appellant had refused to recognize his status as a depositor.    At the trial below the verdict and judgment were for the plaintiff.

It is contended that the defendant was entitled to a directed verdict, but we think a jury question was presented.    Hunter testified that when he closed his account with the Bank of Dierks about a year before its failure, he was dissatisfied with the conduct of the bank officials and with their statement of the amount to his credit.    He believed that he then had on deposit at least $1,200 more than the amount shown by the bank.    The bank failed in August, 1952, and the FDIC undertook to make good the losses to insured accounts.    It appears from the testimony that the FDIC concluded from its investigation, the details of which are not shown, that Hunter had a deposit of $1,200 at the time the bank closed its doors.    Apparently the FDIC re-established a credit to Hunter in that amount.    Thereafter the liabilities of the defunct institution were assumed by the appellant, which took over all sound assets and received from the FDIC cash equal to the excess of insured liabilities over these assets.

On September 2, 1952, the appellant wrote a letter to the appellee, stating that "your deposit in the sum of $1,200 in the Bank of Dierks, as appearing on the records of that bank at the close of business on August 16, 1952, has been assumed by this bank."    The appel-

lant's president testified that the records which he received from the FDIC showed the balance in Hunter's account to be $1,200. In March of 1953 the FDIC apparently decided that it had been in error in setting up the $1,200 credit to Hunter. It requested the appellant to refund that sum, and, since Hunter had allowed the credit to remain on deposit, the appellant extinguished his account by paying the $1,200 to the FDIC. That action resulted in the present suit.

Thus the jury had a choice of three grounds for finding that Hunter had a $1,200 deposit in the Bank of Dierks: (a) Hunter's testimony to that effect, (b) the appellant's letter of September 2, and (c) the testimony of the appellant's president. It is now argued that Hunter's testimony is not as positive as it might be and that the FDIC re-established Hunter's account solely on the basis of information supplied by Hunter himself. One flaw in this argument is that on the evidence the jury was not required to infer that the FDIC relied only on Hunter's statements in allowing him a credit of $1,200. No one who participated in the FDIC investigation was called as a witness. The record does not disclose why the FDIC set up the credit now in dispute, nor why it later decided that it had been mistaken. Hunter's proof made a *prima facie* case, shifting to the appellant the burden of going forward with evidence to the contrary. It cannot be said that Hunter's proof was incontrovertibly overcome.

Even though a case was made for the jury the judgment must be reversed for the giving of this instruction, at the plaintiff's request: ''The court instructs the jury that the statement that defendant bank furnished plaintiff on March 30, 1953, shows conclusively that plaintiff had a balance of $1,200.00 on March 21, 1953. It therefore devolves upon the defendant bank to prove by a preponderance of the evidence that the plaintiff authorized the defendant bank to pay the $1,200.00 to the FDIC and charge it to plaintiff's account, and that the defendant bank did so under and by virtue of such authority. So you are told in this connection, if you find

from a preponderance of the testimony that the defendant bank furnished plaintiff a statement showing that on or before March 21, 1953, the plaintiff had a balance of $1,200.00 in his account and that it was withdrawn without any authority from the plaintiff, or without his knowledge and consent, then you must find for the plaintiff.''

The vital question in the case was whether the FDIC acted under a mistake of fact in crediting Hunter's account with the sum in dispute. This instruction in effect decided that question in the plaintiff's favor, by stating that the appellant's action in sending out a bank statement some six months later ''conclusively'' showed that Hunter's bank balance was correct. Since there was no proof whatever that Hunter authorized the appellant to pay the money to the FDIC, this instruction was in substance a peremptory charge for the plaintiff. It is true that a similar instruction was approved in *Bank of Hatfield* v. *Chatham*, 160 Ark. 530, 255 S. W. 31, but in that case the amount of the depositor's account was not in controversy, while here that was the main issue to be determined by the jury.

Reversed and remanded for a new trial.

Justices McFADDIN and MILLWEE think the judgment should be affirmed. The Chief Justice and Justice HOLT think the judgment should be reversed and the cause dismissed. Thus a majority vote to reverse the judgment but not to dismiss the cause.

GRIFFIN SMITH, Chief Justice, dissenting. The record conclusively shows that the credit established by FDIC was a mistake, and that appellee had withdrawn his money.

The depositor closed his account in the Bank of Dierks September 7, 1951, by writing a check for $2,146.69—the exact amount of his balance. In October two checks written by Hunter's wife were paid and Hunter took care of the overdraft. When the account was closed the depositor did not even inferentially

question correctness of the payment; nor was it ever suggested that an improper check was charged to him.

The entire case, and this court's affirmance, rest upon the proposition that one who has been a bank customer may, months later, and when the institution has failed, establish his right to an erroneous credit by testifying that he "thinks, maybe" he had put in more money than the bank had credited him with, or that he "probably" was the victim of bad bookkeeping—and he may do this without showing when the theoretical deposit was made, how he came by the money, or even naming the day or month the error or deception occurred. If third parties, charged with the duty of examining the bank's affairs, erroneously conclude that money may have been deposited (basing this assumption upon hearsay and vagrant statements) and authorize such a credit, a jury may "suppose" that the deposits were made.

I would reverse the judgment and dismiss the cause.