BARHAM *v.* CRITTENDEN COUNTY BANK.

Opinion delivered January 11, 1926.

1. BANKS AND BANKING—INSOLVENCY—SALE OF ASSETS.—Under Crawford & Moses' Dig., § 720, the chancellor is authorized in vacation without notice to its stockholders to direct a sale of all of the assets of a defunct bank, including the liability of its directors for dereliction in duty; provided that the bank itself or any of its stockholders may, within 10 days after the Bank Commissioner took possession, apply to the chancellor to enjoin such proceeding, as provided by § 724, *Id.*

2. BANKS AND BANKING—SALE OF ASSETS OF DEFUNCT BANK TO FORMER DIRECTORS.—A sale of the assets of an insolvent bank to its former directors, including the liability of such directors to the bank, was not fraudulent as to the stockholders, though it was an indirect way of payment by the directors of their liability, where the sale was advantageous to the stockholders and for an adequate consideration.

3. BANKS AND BANKING—INSOLVENCY—SALE OF ASSETS—FRAUD.—Where the chancellor, before approving a sale of the assets of an insolvent bank to its former directors, was fully informed by a written proposal that the liability of the directors was to be conveyed as one of the assets, the sale was not fraudulent as concealing a purpose of the directors to obtain immunity.

4. BANKS AND BANKING—INSOLVENCY—SALE OF ASSETS.—Where a new bank purchased outright all of the assets of a defunct bank, and agreed that if, in the liquidation, the loans and discounts realized more than a certain sum, the surplus should go to the reduction of the stockholders' liability, the fact that no valuation was placed on such loans and discounts would not convert the sale into a mere assignment.

Appeal from Crittenden Chancery Court; *J. M. Futrell,* Chancellor; affirmed.

*Hughes & Hughes,* for appellant.

HUMPHREYS, J. The question presented for determination by this appeal is whether the amended bill of appellants states a cause of action against the directors of the Crittenden County Bank & Trust Company. The trial court sustained the special demurrer of the Crittenden County Bank and the general demurrer of the directors of the Crittenden County Bank & Trust Company to the amended bill of appellants, who were stockholders

of the Crittenden County Bank & Trust Company at the time it passed into the hands of the State Bank Commissioner for liquidation. Appellants stood upon their amended bill, whereupon the court dismissed the bill, from which dismissal an appeal has been duly prosecuted to this court.

Appellants sought by their amended bill to enforce an alleged liability of the directors of the Crittenden County Bank & Trust Company for misfeasance, malfeasance, and nonfeasance in the performance of their duties. The amended bill alleged derelictions of the directors of the Crittenden County Bank & Trust Company, and a fraudulent sale of the assets of said bank, including its directors' liability, to the Crittenden County Bank, and, further, that the contract and sale of said assets, when properly interpreted, was to the effect that the stockholders of the defunct bank should have a residuary interest in the assets thereof. The proceedings in insolvency of the Crittenden County Bank & Trust Company in the chancery court of Crittenden County were made exhibits to appellants' amended bill. The facts revealed by the amended bill and the exhibits attached thereto necessary to a determination of this question are as follows:

The Crittenden County Bank & Trust Company was a banking corporation duly incorporated and doing its banking and trust business under the banking laws of Arkansas. Its main bank was at Marion, and its branches at Earle and Crawfordsville in said county. It became insolvent, and on December 10, 1923, its affairs were taken over by the State Bank Commissioner for liquidation. The Crittenden County Bank was immediately organized with a paid-up capital and surplus of $220,000 by some of the directors of the old bank and other parties for the purpose of purchasing the assets of the defunct bank and doing a general banking business at Marion. The new bank made an offer in writing to the State Bank Commissioner to purchase the assets of the old

bank, including the liability of the directors to the old bank on account of derelictions in the performance of their duties, and the 100 per cent. assessment against the stockholders of the old bank, except the surplus, if any, of loans and discounts after the collection of $1,180,156.01 out of them by the new bank, in consideration of the assumption of the indebtedness of every kind and nature of the old bank by the new bank, except the indebtedness of the old bank to its stockholders. An examination of the assets and the liabilities of the old bank by the State Bank Commissioner showed that the bank was insolvent, even if the 100 per cent. assessed against the stockholders could be fully collected. Ten days after the written proposal of the new bank to buy the assets of the old bank was made, the State Bank Commissioner accepted the offer, subject to the approval of the chancellor in whose court the insolvency proceedings were pending. At the expiration of that time, no objection having been interposed by the stockholders of the old bank, the State Bank Commissioner made a full report of the condition of the old bank and the organization and proposal of the new bank to purchase its assets, including the liability of the directors for derelictions in office, to said chancellor in vacation at his office in Paragould in Greene County, and by petition requested that he be permitted to consummate the sale upon the terms set out in the written proposal. The chancellor, being fully advised, found that the administration of the affairs of the defunct bank had been duly docketed in the Crittenden Chancery Court, and that it was to the best interest of the estate to accept the offer, whereupon he directed the Bank Commissioner to consummate the sale. On the same day the sale was consummated, reported, approved and confirmed by the chancellor in vacation. The assets of the old bank were delivered to the new bank, whereupon it proceeded to do business under its charter. The written proposal and acceptance of the sale of the assets of the old bank and the report made to the chancellor placed

a valuation on a large part of the assets, but did not value the directors' liability for mismanagement of the affairs of the old bank, nor the loans and discounts. The value of the loans and discounts was to be ascertained and determined by liquidation. It is unnecessary to detail the facts alleged as constituting the derelictions of the directors of the old bank, for appellees admit the sufficiency of the allegations in this respect, if the sale was invalid for any reason.

It is first contended that the sale was fraudulent because the order authorizing and approving it was made in vacation without notice to the appellants. The proceedings for winding up the affairs of an insolvent bank are summary in nature. Under § 720 of Crawford & Moses' Digest orders for sales of the assets of a defunct bank may be made and confirmed by the court in vacation without notice. If the old bank or its stockholders were of the opinion that the liability of the directors for derelictions in office should have been enforced through the courts rather than sold, application should have been made to the chancellor in vacation within ten days after the Commissioner took possession of the affairs and assets of the old bank to prevent the sale of the liability. Section 724 of Crawford & Moses' Digest so provides.

It is next contended that the sale was fraudulent because the effect thereof was to destroy the liability of the directors as an asset, for the reason that the new bank, composed largely of the directors of the old bank, would not sue themselves for their own derelictions in the management of the old bank's affairs. There can be no question, under the allegations of the bill as controlled by the exhibits, that one of the objects of the directors in organizing the new bank and purchasing the assets of the old bank was to obtain immunity from their derelictions. We are unable to see any fraud in this transaction, for it was an indirect way by the directors of paying their liability. To state it another way, they liquidated the claims against them for derelictions in office

by buying this particular asset along with all other assets of the bank for a fair consideration. It is not alleged in the bill that the sale was an improvident one or that a grossly inadequate consideration was paid by the new bank for the assets of the defunct bank. On the contrary, it appears from the exhibits to the bill that the sale was an advantageous one and to the best interest of the creditors of the old bank, even saving to the stockholders of the defunct bank the equity in the loans and discounts after $1,800,156.01 had been realized out of them by the new bank.

It is next contended that the sale was fraudulent because the purpose of the directors to obtain immunity through the transaction was concealed from the chancellor. The written proposal to purchase the assets of the old bank and the report of the commissioner to the chancellor reveal that the liability of the directors was to be conveyed as one of the assets. The chancellor must have known that, when this asset passed by the sale, the purchaser could release the directors from liability. According to the exhibits, the chancellor was fully apprised of all the facts in the case and must have understood the transaction and the effect thereof on the liability of the directors.

We do not think the bill as controlled by the exhibits alleges facts sufficient to show that there was fraud in the sale and purchase of the assets of the old bank to the new bank.

Appellants contend, however, that the written proposal by the new bank and the acceptance thereof by the Commissioner amounted to an assignment, and not to a sale of the assets of the old bank. We have carefully read the proposal and acceptance, and are of the opinion that it amounts to an absolute sale and purchase by the new bank of the assets of the old bank. Certainly, it could not have been the intention of the parties for the new bank to assume all the liabilities of the old bank for the mere privilege of recouping out of the assets of a

defunct bank which were delivered to it. Such a conclusion is not warranted by the fact that a present valuation was not put upon the loans and discounts, and that their value up to $1,800,156.01 was to be ascertained by the process of liquidation. The proposal was to buy all the assets of the defunct bank in consideration of the assumption of all the indebtedness of the old bank by the new bank. It was not necessary to value any of the assets in order to consummate a sale thereof. The failure then to value a part of them would not convert a sale into an assignment of them. Neither would the adoption of a plan or method to arrive at the value of any particular asset convert a sale into an assignment of the assets. The demurrer was properly sustained to the bill, and the decree is affirmed.

Mr. Justice SMITH did not participate.