LITTLE ROCK BRANCH OF FEDERAL RESERVE BANK OF ST. LOUIS *v.* TAYLOR.

Opinion delivered April 13, 1931.

634

James G. McConkey and Rose, Hemingway, Cantrell & Loughborough, for appellant.

Robinson, House & Moses, for appellee.

KIRBY, J., (after stating the facts). It is well-established law that a bank receiving a draft for collection merely is the agent of the remitter, drawer or forwarding bank, and takes no title to the paper or the proceeds when collected, but holds same in trust until remitted. Darragh Company v. Goodman, 124 Ark. 532, 187 S. W. 673.

It is also true that no lack of diligence was shown by appellant bank in handling the items by sending the checks for collection direct to the bank on which they were drawn, nor in said drawee bank in charging the amounts of said checks against the account of the drawer thereof. Rainwater v. Federal Reserve Bank, 172 Ark. 631, 290 S. W. 69; Lister v. First National Bank of Van Buren, 181 Ark. 140, 25 S. W. (2d) 26.

The forwarding of the amount of the checks collected by the Bank of Bauxite to the appellant, the sending bank, of its check on its correspondent bank in Little Rock, the American Exchange Trust Company, did not constitute a payment of the money collected, since the correspondent bank had closed its doors before presentation of the checks in due time as did the collecting bank, both of which were insolvent and not able to re-open at the end of the five days of suspension allowed by law and were taken charge of by the Bank Commissioner. It is insisted therefore that under the statute, act 107 of 1927, p. 298, that, since the Bank of Bauxite, on which the checks were drawn, had made the collection by charging the amount of said checks against the account of its customer or depositor, the drawer, and had forwarded its

check or draft therefor against its correspondent bank at Little Rock, and had returned and surrendered the paid checks to the drawer thereof prior to the Bank Commissioner's taking charge, he could not reverse the entries upon the books of the bank as to the collections made and return the checks to the bank sending them for collection and that, therefore, the transaction was completed, and the collecting bank's claim for priority of payment must be sustained, since it cannot be extinguished by the reversal of the entries on the bank's books and the return by the collecting bank of the checks.

The statute provides: "A prior creditor shall be: * * * (7) The owner of a remittance of the said bank, the proceeds of a collection made by said bank by honoring a check or other order upon itself, or by a charge against the account of its depositor, although the said collection has not had a distinctive identity in the hands of said bank, has not actually increased its cash assets, and has resulted in merely shifting its liability upon its books from one of its creditors to another or new creditor, in instances where the said remittance has been presented with due diligence for payment to said bank or its drawee and is not paid, and where the instrument collected cannot be returned by the Commissioner to the person who had transmitted the same to said bank for collection, the said instrument having been surrendered by said bank upon its collection in such manner prior to the Commissioner taking charge, it being hereby made the duty of said Commissioner to reverse the entries upon the books of said bank as to all collections made in such manner in all instances where the said unpaid remittance has been so presented with due diligence and where the said instrument remains in said bank unsurrendered, by which said reversal of entries the said instrument shall be deemed to be from its inception unpaid, and thereupon the said Commissioner shall return the said instrument to the person who had transmitted the same to said bank, which return shall be in extinguishment to the extent thereof of the said remittance. * * *" Act 107 of 1927.

It is true that this statute provides that all creditors of a bank of which the commissioner has taken charge are classifiable, etc., and where the instrument collected cannot be returned by the commissioner to the person who transmitted the same for collection, the said instrument having been surrendered by said bank upon its collection in said manner "prior to the Commissioner taking charge," etc., but the majority is of opinion that the act of insolvency by the bank in suspension of payment of checks on demand for the alleged protection of the stockholders and creditors without reopening the bank at the end of the time of suspension and the Bank Commissioner's taking actual charge thereof is sufficient within the meaning of the act, and his authority relates back and begins from the time of the suspension of payment or act of insolvency, so far as the right to make reversal of entries upon the books as to the showing of collections made against depositors during such suspension, and certainly that, since the bank should not have surrendered these checks after charging off the amount thereof against the account of its depositor during the period of suspension of payment of checks, its having done so could not deprive the Bank Commissioner of the right to reverse the entries on the bank's books about the collections to show the checks uncollected. The checks having been wrongfully surrendered and returned to the drawer without any intent, it is true, of in any way conducing to a preference of the claim for payment or constituting it a priority, it could not have such effect. The Bank Commissioner therefore was authorized to reverse the book entries showing the payment of this claim, and, the checks having been wrongfully returned to the drawer, no payment thereof was constituted, and the drawer still remains liable therefor.

The decree is affirmed accordingly.

Mr. Justice SMITH dissents.