TAYLOR *v.* JONESBORO TRUST COMPANY.

Opinion delivered June 1, 1931.

*Sam Rorex* and *Lamb & Adams,* for appellant.
*Horace Sloan,* for appellee.

MEHAFFY, J. On July 17, 1927, the American Trust Company and the Jonesboro Trust Company, banking institutions, in Jonesboro, Arkansas entered into a contract which provided, among other things, that the Jonesboro Trust Company sold, part absolutely and part in trust, all its assets to the American Trust Company.

The American Trust Company assumed the payment of all bills payable, depository liability, unpaid operating expenses for July, 1927, of the Jonesboro Trust Company, the payment of all taxes, and local assessments on the Jonesboro Trust Company property that the committee of that company might direct and to advance money for insurance premiums on said property; to advance moneys not in excess of $5,000 to pay any contingent liabilities of the Jonesboro Trust Company not then shown on the books of that company, if approved and ordered paid by the committee of the Jonesboro Trust Company, and to loan annually during the years 1927-1931, both inclusive, sums not exceeding in the aggregate $10,000 for the purpose of furnishing mortgagors in financing the operation of lands mortgaged to the Jonesboro Trust Company for the purpose of protecting the security of the said company.

The Jonesboro Trust Company sold absolutely to the American Trust Company its banking house and fixtures, its insurance department, $335,000 in bills receivable at par, and to be selected by the buyer, and in addition the American Trust Company took at par all cash on hand and bank deposits in correspondent banks due the Jonesboro Trust Company. The residue of the property of the Jonesboro Trust Company consisted principally of

bills receivable, stocks and bonds, and real estate. The contract provided that these assets should be held in trust by the American Trust Company and disposed of as rapidly as possible with the approval of the committee of the Jonesboro Trust Company and the proceeds applied as collected to reduce the remainder of the obligations assumed by the Jonesboro Trust Company.

The contract entered into was quite lengthy, containing 32 separate paragraphs. We deem it unnecessary to set out the entire contract. The contract was properly signed by the Jonesboro Trust Company and the American Trust Company, and was approved by the Bank Commissioner in the following words: "The foregoing contract has been examined by the Arkansas State Banking Department, and same is hereby approved." The statement was signed by Walter E. Taylor, State Bank Commissioner.

It was stipulated that the cause might be finally tried in vacation upon the stipulations and the pleadings; that the plaintiffs named in the complaint as stockholders of the Jonesboro Trust Company are in fact stockholders of said company; that the following copies of documents with their exhibits shall be treated as evidence:

Exhibit A. Copy of minutes of special stockholders' meeting of Jonesboro Trust Company on July 25, 1927.

Exhibit B. Copy of minutes of meeting of directors of American Trust Company on July 9, 1927.

Exhibit C. Copy of minutes of meeting of directors of American Trust Company of July 12, 1927.

Exhibit D. Copy of minutes of meeting of directors of American Trust Company, July 15, 1927.

Exhibit E. Copy of minutes of meeting of stockholders of American Trust Company, August 2, 1927.

Exhibit F. Copy of document executed as an amendment to articles of agreement and incorporation of American Trust Company recorded in Corporation Record 3, page 319, in the office of the county clerk, Jonesboro District, Craighead County, Arkansas.

Exhibit G. Copy of document executed as an amendment to articles of agreement and incorporation of Merchants' & Planters' Bank & Trust Company, recorded in Corporation Record 3, page 319, in the office of the county clerk, Jonesboro, Arkansas.

Exhibit H. Copy of document executed as an amendment to articles of agreement and incorporation of Jonesboro Trust Company, recorded in Corporation Record 3, page 320, in the office of the county clerk, Jonesboro District of Craighead County, Arkansas.

Another stipulation is that the contract actually executed bears the date July 17, 1928.

After the contract was entered into, the American Trust Company assumed possession of the banking house, fixtures, and furniture, insurance agency, cash, deposits in other banks and notes receivable of the Jonesboro Trust Company taking outright the items called for in the contract, and holding in trust the remainder of the assets of the Jonesboro Trust Company. The American Trust Company either paid or substituted its own notes for the outstanding bills payable of the Jonesboro Trust Company, and all the depository liabilities of the Jonesboro Trust Company were changed so that thereafter each depositor was either paid his deposit or had a similar deposit account with the American Trust Company. Sundry outstanding small bills of the Jonesboro Trust Company were paid by the American Trust Company with the result that under the said contract the American Trust Company became the sole creditor of the Jonesboro Trust Company. To pay off the balance due the American Trust Company (i. e., the difference in liability assumed by the American Trust Company and the agreed value of the assets purchased outright from the Jonesboro Trust Company by the American Trust Company), effort was made, as outlined in the contract between the two companies, to reduce assets held in pledge to cash and apply same on the said balance, this being done in co-operation between the American Trust

Company and the Jonesboro Trust Company, as provided in the said contract, and the liquidation of the Jonesboro Trust Company has proceeded since then up till November 1, 1930, in the manner provided by the said contract, with the knowledge of the State Bank Commissioner.

Prior to November 1, 1930, the date of the closing of the American Trust Company and its taking over by the State Bank Commissioner, the validity of the contract in providing for such method of liquidation was not questioned by the State Bank Commissioner or any party to the contract. However, on January 27, 1931, Walter E. Taylor, State Bank Commissioner, without notice of any kind to any one connected with the Jonesboro Trust Company, declared that he was taking exclusive charge of the affairs of the Jonesboro Trust Company, and appointed the defendant, George A. Knox, as his special deputy, for such purpose, a true copy of order appointing said George A. Knox is hereto attached as Exhibit I. No stockholder, officer or any other person connected with the Jonesboro Trust Company, knew, or had any information, as to any intention of the State Bank Commissioner to make or to file the order for his taking over the affairs of the Jonesboro Trust Company until January 27, 1930, the date of the filing of the order appointing Geo. A. Knox.

After the making of the contract between the Jonesboro Trust Company and the American Trust Company, the Jonesboro Trust Company maintained no office or place of business of its own, but the business of liquidation was transacted either at the office of the American Trust Company, or at the headquarters of the liquidation committee of the Jonesboro Trust Company, at the office of Horace Sloan, attorney at law, Jonesboro, Arkansas; that after said date the said Jonesboro Trust Company did not hold itself out as transacting a banking business, it received no deposits of any kind whatever, but was engaged solely and exclusively to reduce its

assets to cash, as contemplated in the agreement between it and the American Trust Company.

On July 25, 1927, a meeting of the stockholders of the Jonesboro Trust Company ratified the contract made on July 17, and above referred to. On the 9th day of July, 1927, a meeting of the directors of the American Trust Company was held and a committee was appointed and given full authority to close the deal with the Jonesboro Trust Company. Before the contract was executed the signatures of holders of more than two-thirds of the capital stock of the American Trust Company had been secured. Amendments to articles of agreement, showing the approval and filing with the committee on March 29, 1928, were introduced in evidence. Other documents were introduced showing a compliance with the law in the execution of the contract.

The appellees brought this suit in the chancery court to enjoin and restrain the Bank Commissioner and special deputy from taking over or keeping in their possession any of the assets of the Jonesboro Trust Company, except so far as the American Trust Company would be entitled to do under its contract with the Jonesboro Trust Company, and to cancel the appointment of Geo. A. Knox as special deputy, and to enjoin and restrain the Bank Commissioner from appointing any person to take charge or attempt to take charge of the assets of the Jonesboro Trust Company, and to enjoin Walter E. Taylor, Bank Commissioner, from personally taking charge or interfering in any way with the contract.

Appellants filed answer denying all the material allegations of the complaint. The chancellor entered a decree in favor of the appellees, enjoining and restraining the Bank Commissioner and deputies from taking over any of the assets of the Jonesboro Trust Company except in so far as the American Trust Company would have been entitled to do under the contract of July 17, but permitting the Bank Commissioner to exercise and enforce such control over the disposition of the assets and

the liquidation of the Jonesboro Trust Company as was given to the American Trust Company under the terms of the contract to the end that the terms of the contract shall be carried out in their entirety. The case is here on appeal.

Appellants first contend that all contracts, such as the one involved here, are to be limited and construed by the legal status of banking institutions as fixed by statutory regulation and judicial construction when the contract was executed. It is contended that our statute is a borrowed statute; that is, that it is practically a copy of the national banking law, and that when we adopted this statute we adopted its construction by the federal court. This is true, but this does not mean that when we adopt a statute we will follow decisions thereafter rendered by other courts; but we know of no decision by the federal court handed down, either before or since the adoption of this statute, that prohibits the making or holds invalid a contract like the one here involved.

Appellant has called attention to numerous decisions of the federal court, and none of these hold that a contract like the one here involved is invalid, and we know of no decision to that effect. Some of the decisions to which appellant calls attention are to the effect that a contract made in contemplation of insolvency, or made for the purpose of giving a preference, is invalid, but these questions are not involved in this case. The contract was not made for the purpose of giving a preference.

The original statute in Arkansas provided only for reorganization or consolidation, and did not provide for purchase or acquisition by one bank of the assets of another. The act of 1923, however, provided that any bank may effect such reorganization, purchase, or acquisition or consolidation, etc. This act expressly provides that banks may do the things provided for in this contract. It provided that one bank may purchase all or any part of the assets of another. Acts 1923, p. 515, § 4.

This section of the statute was complied with, and there is no contention that there was failure to do any of the things provided for in this statute. The contract therefore was expressly authorized by statute.

This court, in approving a contract similar in some respects to the one involved, said: "They agreed with the appellant that they would take over the assets of the Valley Bank and pay into such bank the money necessary to discharge its obligations and assume the risk of whatever loss might be involved in the transaction." The court also said: "The doctrine applicable to the facts of this record is announced in the case of *Schofield* v. *National Bank,* 97 Fed. 282, and expressed in syl. No. 3 as follows: 'A contract by a national bank to assume and pay the liabilities of another bank in consideration of the transfer to it by the other bank of its office furniture and lease and its cash and cash assets, and the further assignment to a trustee for its benefit of bills receivable and securities, is not *ultra vires,* but is within its powers conferred by statute to conduct a general banking business.' " *Nakdimen* v. *First National Bank,* 177 Ark. 303, 6 S. W. (2d) 505; *Barham* v. *Crittenden County Bank,* 170 Ark. 77, 278 S. W. 636.

This court upheld the validity of a contract of the purchase of the assets of one bank by another in the case of *State use Crawfordsville Special School Dist.* v. *Huxtable,* 178 Ark. 361, 12 S. W. (2d) 1.

The appellant says that no established rule of law, whether statutory or common law, can be abrogated or to any extent modified by contract. It is also true that no valid contract can be abrogated or to any extent modified without the consent of both parties. It is argued that the statute under which the contract was made does not contemplate the assumption by a solvent banking institution of the debts of an insolvent bank. No one knew at the time of the making of this contract that either of the banking institutions was insolvent. Both banks had been examined by the State Banking Department and were not

only thought to be solvent, but the Bank Commissioner actually approved the contract. This was not a reorganization or a consolidation, and, under the original act and the Acts of 1917 (p. 748) no authority existed to make a contract of purchase, but, under the Acts of 1923, a purchase by one bank of the assets of another was expressly authorized.

It is contended that the rights, remedies, and procedure under the banking act are exclusive. The remedy or procedure in this case was under the provision of the banking act, a provision which expressly authorized the kind of contract here involved. But it is contended that, when both banks became insolvent, the Bank Commissioner automatically became the liquidating agent, armed with all the power and authority under the banking statute. He had no more authority and could have had no more than the American Trust Company itself had. As we have already said, it was a valid contract, and cannot be abrogated without the consent of both parties.

The statute authorizes the Bank Commissioner to take charge of a bank, and, if found to be insolvent, he shall have full power and authority to hold and retain possession of all the money, rights, credits, assets, and property of every description. Section 711, Crawford & Moses' Digest.

Section 719 of Crawford & Moses' Digest provides for taking possession of the property of any bank and § 720 authorized the sale of any property, but the Jonesboro Trust Company has no property; it had no assets; it sold all of its assets, with the approval of the Bank Commissioner, to the American Trust Company, part of the property being sold outright, and part of it in trust, but all of its property was sold, and it has no property that the Bank Commissioner could take charge of.

We deem it unnecessary to review the authorities cited by counsel, because the contract involved here is authorized by statute, the requirements of the statute were complied with, the Jonesboro Trust Company sold

912

all of its property as it had a right to do, and the contract was approved by the Bank Commissioner.

One of the authorities cited and quoted from by appellant in its reply brief was *Derscheid* v. *Andrew*, 34 Fed. (2) 884. In that case the court said: "However, a contract as here made is valid, and the state bank a creditor to whom the stockholders are liable if made while the national bank was still in active operation and not thought to be insolvent."

The contract in this case was made when it was not thought that either bank was insolvent. Moreover, in the case above quoted from the suit was to collect from stockholders, and that question is not involved here.

The decree of the chancellor is affirmed.

Mr. Justice KIRBY dissents.