KRUMPEN *v.* TAYLOR.

Opinion delivered June 8, 1931.

1048

*George C. Lewis,* for appellant.

*A. G. Meehan* and *John W. Moncrief,* for appellee.

HART, C. J., (after stating the facts). At the outset it may be stated that, under our statute regulating the liquidation of insolvent banks, orders for sales of the assets of an insolvent bank may be made and confirmed by the chancery court in vacation without notice. Section 720 of Crawford & Moses' Digest; and Supplement to Crawford & Moses' Digest by Castle, § 719; Acts of 1921, p. 514; *Barham* v. *Crittenden County Bank,* 170 Ark. 77, 278 S. W. 696. This holding was recognized and approved by the court in *State use of Crawfordsville Special School District* v. *Huxtable,* 178 Ark. 361, 12 S. W. (2d) 1.

Without regard to whether the sale of the assets of the insolvent bank to the new bank was improvident or not, the sale should not have been confirmed because the new bank was organized in violation of the provisions of our Constitution regulating the organization of private corporations. Article 12, § 8, of our Constitution provides that no private corporation shall issue stocks or bonds except for money or property actually received or labor done. The interveners offered to prove that practically all of the stock issued by the new bank was paid for in checks by the subscribing stockholders against funds held by them in the insolvent bank. The court

erred in refusing to admit the excluded evidence; for its admission would have shown that subscriptions for stock in the new bank were to be paid by the subscribing stockholders in checks given by them upon the funds owed them by the insolvent bank. This was a palpable evasion of the provision of the Constitution above referred to. This court has uniformly held that under the Constitution of 1874, article 12, § 8, prohibiting the issuance of stocks by private corporations except for money or property actually received, a note given to such a corporation for the purchase of stock in it is void. *Bank of Commerce* v. *Goolsby*, 129 Ark. 416, 196 S. W. 803; *Bank of Dermott* v. *Measel*, 172 Ark. 193, 287 S. W. 1017; and *Bank of Manila* v. *Wallace*, 177 Ark. 190, 5 S. W. (2d) 937.

The depositors of the insolvent bank were creditors of it, and the payment by them of subscribed stock in the new bank by checks on the funds owned by them in the insolvent bank could in no sense be called a compliance with the Constitution. It was a plain violation of the constitutional provision referred to to pay their stock subscriptions in the new bank by checks given on the insolvent bank for money due them by it. The sale of the assets of an insolvent bank to a new bank which was not legally organized could not be a valid sale and binding upon the depositors and creditors of the insolvent bank. The excluded evidence would have shown that the new bank was not organized according to law; and the chancery court therefore erred in approving and confirming a sale of the assets of the insolvent bank to it.

Therefore, the decree will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion, and in accordance with the principles of equity. It is so ordered.

HART, C. J., (on rehearing). This is a plain case confused by much argument on the motion for a rehearing. As will be seen from the sections of the statute cited in our orginal opinion and our decisions construing

them, an order of the chancery court is necessary for a sale of the assets of an insolvent bank by the State Bank Commissioner. The order of approval of the chancery court is a prerequisite before any sale of the assets of a bank in the hands of the State Bank Commissioner for liquidation can be made. The Commissioner may negotiate the terms of sale, but it is the decree of the chancery court which gives effectiveness to the contract. In so far as the assets and property of the insolvent bank were concerned, the State Bank Commissioner must act under the order of the chancery court, and is, in this respect, the arm of the court as though acting as receiver under the appointment of the court.

Recognizing this to be the law, the attorneys for the State Bank Commissioner filed a petition in the chancery court asking that the court ratify and confirm a sale of the assets of the insolvent bank pursuant to certain negotiations which were exhibited with the petition. In the petition it is alleged that a new bank has been organized for the purpose of purchasing the assets of the insolvent bank, said new bank having a capital stock of $75,000, which has been fully paid in cash. The interveners replied that they had no knowledge of a bank having been organized with a capital stock of $75,000, but they denied that said capital stock had been paid in cash or that any part of the same has been paid in cash. It was stipulated between the parties that a list of depositors who became stockholders in the new bank need not be copied in full in the transcript, but that same shows an aggregate subscription to the stock of the new bank in the sum of $78,452.32, divided among 465 stockholders.

We also copy from the record the following:

"The petitioners, L. Krumpen, Sr., and others, hereby offer to prove that practically no cash has been paid into the so-called new bank, but that its capital has been made up of checks given against funds held by depositors in the failed bank.

"John Moncrief: We object to that testimony.

"The court declined to permit the introduction of testimony to that effect.

"To which ruling the petitioners excepted at the time."

We held in our original opinion that the chancery court erred in not allowing appellants to introduce the offered proof in evidence, and said that the offered proof tended to show that the bank was not legally organized. We did not mean to say that the Bank Commissioner could not contradict the offered evidence.

In addition to what we said about the Constitution requiring the capital stock of corporations to be paid in cash or in property received or in labor done, we call attention to the provisions of our bank law on the subject. Section 677 of Crawford & Moses' Digest and § 677 to Castle's Supplement. It can be seen from reading these sections that it is not contemplated that a new bank shall be authorized by the Commissioner until the capital stock subscribed is paid in. It may be true, as contended by counsel for appellee, that none but the State can call in question the organization of the new bank. The fact that the State may do so is a good and sufficient reason why the chancery court should not have confirmed the sale of the assets of the insolvent bank to the new bank unless the new bank was organized according to law. The creditors of the insolvent bank would be without remedy if they did not attack the sale of the assets of the insolvent bank to the new bank; for, if the order of the chancery court confirming the sale should become final, then any attack after that would be a collateral one unless the order of the chancery court confirming the sale was void on its face.

That is not the case here. The issue before the chancery court was whether or not the sale was a provident one; and, as bearing on that question, appellants offered to prove that practically no cash had been paid into the new bank, and that its capital had been made up by checks given against funds held as depositors in the insolvent

bank. The Bank Commissioner stood in the shoes of the insolvent bank, and questions of offset might come up, and it was a material and pertinent question for the chancery court to decide whether capital stock in the new bank had been actually paid in. It was proper for the chancellor to consider the evidence bearing on this question. On the one hand, the interveners might substantiate their contention that the capital stock was not paid in, and, on the other, the Bank Commissioner might contradict it by showing that the capital stock had been paid. It was the duty of the chancellor to consider all the facts and circumstances attending the sale in order to determine whether it was a provident or improvident sale. Otherwise, the whole matter might just as well have been placed exclusively in the hands of the State Bank Commissioner. If the approval of the chancery court was absolutely required for a valid sale of the assets and property of the insolvent bank, it necessarily follows that the chancery court is vested with some discretion in the matter. The Bank Commissioner may negotiate the terms of the sale, but it is the order of the chancery court which gives effectiveness to the contract.

An appeal was taken to this court from an order of the chancery court approving the sale. Chancery cases are tried *de novo* on appeal, and this is a direct and not a collateral attack on the decree of the chancery court. Upon a remand of the case, the whole matter will be before the chancery court anew, and it will become its duty to hear all evidence bearing on the question whether the sale was a provident or an improvident one, and in determining this question, evidence as to whether or not the subscribed capital stock of the new bank was actually paid in is material and relevant to the issue.

Therefore, the petition for rehearing will be denied.