TYLER *v.* CITIZENS' BANK.

Opinion delivered October 12, 1931.

334

*Albert G. Sexton* and *Reed & Beard,* for appellant.
*George E. Morris* and *Chas. A. Walls,* for appellees.

HART, C. J., (after stating the facts). The record shows that the complaint in this case was filed and summons issued on February 7, 1931. The Citizens' Bank & Trust Company suspended business and closed its doors on the 29th day of December, 1930; and five days thereafter, the State Bank Commissioner, under the statute, took charge of said bank as an insolvent banking corporation and proceeded to liquidate its affairs. On the 14th day of January, 1931, the Bank Commissioner issued a charter or articles of incorporation to the Citizens' Bank whereby all the assets of the insolvent bank were transferred to it under an agreement that the new bank was to assume all the debts of the insolvent bank.

The complaint further alleged, and this is admitted by the demurrer to be true, that the old insolvent bank could not pay its depositors dollar for dollar, and that the Bank Commissioner, with full knowledge thereof, permitted certain subscribers for stock in the new bank to pay for the same by checking out or drawing their deposits from the insolvent bank for the face value thereof.

It is conceded by counsel for appellees that the allegations of the complaint, which are admitted by the demurrer to be true, brings this case within the principles of law decided in *Krumpen* v. *Taylor,* 183 Ark. 1046, 40 S. W. (2d) 775. There, in considering our Constitution prohibiting the issue of stock by private corporations except for money or property actually received, and our statutes regulating banks, it was held that a new bank could not be legally organized to take over the assets of an insolvent bank by allowing the capital stock subscribed to be paid in checks on the old insolvent bank for the face value of the deposits.

It was also contended in that case that the existence of a corporation could be questioned only at the instance of a suit by the State. We pointed out in that

case that the legality of the new corporation was not an issue to be decided. The question before the court was whether or not the sale of the assets of an insolvent bank to a newly organized bank, which had been erroneously or illegally organized, should be ratified or approved by the chancery court. ·We are asked to overrule the decision in that case but decline to do so.

The record in the present case is an apt illustration of the reason and justice of that decision. No attack is made by the appellants in this case on the organization of the new bank, in so far as it is transacting a general banking business is concerned. This court only decides questions of law which are raised by the pleadings. The issue in this case, as it was in the Krumpen case, is that it is improvident for the chancery court to confirm and ratify a sale of the assets of an insolvent bank to a bank which was erroneously or illegally organized. One of the reasons given is that the State might question the legality of the new bank at any time it might see fit through its proper officers, and, if the court should decide that the new bank had been illegally or erroneously organized, this would leave the rights of the creditors to be adjusted and administered by persons not legally authorized to do so. The depositors are oftentimes widely scattered, and they would be in an unfortunate situation if their property was legally bound by an irregular transaction.

In the present case, under the allegations of the complaint, the depositors in the old bank are not entitled to receive dollar for dollar on the face of their deposits because the old bank is insolvent. If the Bank Commissioner could allow a new bank to be organized by allowing the stock to be paid by checks on an insolvent bank where the depositors could not be paid the face value of their deposits, this would, in effect, allow the bank which had been illegally organized to administer the affairs of an insolvent bank, and thus jeopardize the rights of the depositors and other creditors. If the Bank Commissioner should allow subscribers to stock

in the new bank to pay for the same by checks on their deposits in the old, insolvent bank at the face value of the deposits, this would give such depositors a preference over other depositors who did not subscribe for stock in the new bank, and over general creditors of the insolvent bank, and would thus violate our banking statutes which do not allow preferences except in certain specified instances.

It is not claimed that this case falls within one of the exceptions with reference to preferences. The action of the Bank Commissioner was not an attempt at reorganization of the insolvent bank in compliance with the terms of § 677 of our statutes regulating banks, and the amendment thereto by the Legislature of 1923, Acts of 1923, p. 515; and Castle's Supplement to Crawford & Moses' Digest, § 677. According to the allegations of the complaint, the act of the Commissioner was to grant a charter to a new bank, and no attempt whatever was made to re-organize the old insolvent bank under the statute.

Appellants were depositors in the old insolvent bank; and, whether their deposit was a general or a special one, they had a right to protect it and prevent a preference to other depositors which was not allowed under the statute. They were not parties to the application for the sale of the assets of the insolvent bank to the newly organized bank and are not estopped by that proceeding. They, as depositors of the bank, were creditors of it, and, having taken no part in the attempted sale of the assets of the insolvent bank to the newly organized one which was never legally accomplished, can in no sense be bound by what was done in that proceeding. *Davis* v. *Scott,* 129 Ark. 226, 195 S. W. 383.

It is also insisted that appellants were not entitled to maintain their action because they did not commence it within ten days as prescribed by § 724 of Crawford & Moses' Digest. This section applies to stockholders, and was enacted for the purpose of allowing them to have the affairs of the bank taken out of the

hands of the Bank Commissioner where the bank has been erroneously turned over to him for liquidation as an insolvent bank, and it has no application to a proceeding of this sort. Under the Acts of 1925, the chancery court of Lonoke County was in session at all times. *Sanders* v. *McClintock*, 175 Ark. 633, 300 S. W. 408. The record shows that the order of the chancery court was made on the 14th day of January, 1931, which was only a few days after the Bank Commissioner had taken charge of the insolvent bank for the purpose of liquidation. This complaint was filed at the same term of court at which the order of sale was attempted to be made, and there is nothing in the record tending to show that appellants were guilty of any acts which would estop them from having an attempted sale set aside as being an improvident one for the reasons above stated. It follows that the court erred in sustaining a demurrer to the complaint on this branch of the case.

Appellants also seek in this action to recover the amount of their deposit as a trust fund to which they claim they are entitled as a preference over the other depositors and creditors of the insolvent bank. We do not deem it necessary to enter into a discriminating discussion as to the difference between a general and a special deposit or one which the bank had no authority to mingle with its general funds. According to all our decisions bearing on the question, the evidence adduced in favor of appellees makes the deposit a general and not a special one. *Taylor* v. *Corning Bank & Trust Co.*, 183 Ark. 757, 38 S. W. (2d) 557; *Little Rock Branch of Federal Reserve Bank* v. *Taylor*, 183 Ark. 632, 38 S. W. (2d) 323; and *Taylor* v. *Dierks Lumber & Coal Co.*, 183 Ark. 937, 39 S. W. (2d) 724.

According to the testimony of the president of the insolvent bank, the insurance draft was deposited in the bank by J. E. Tyler upon the condition that no checks were to be drawn upon it until the draft had been collected. This condition was entered into because the bank did not wish the draft to be checked against

until it had been actually collected and the proceeds were in the hands of the bank. After the draft had been collected, Tyler drew several checks upon the fund, the largest of which was something over $1,500, and these checks were paid by the bank. On the other hand according to Tyler, he had deposited the draft with the bank as a trust fund upon the agreement that the bank would pay certain specified debts due by Tyler and then deliver the balance to him in money. This was done because Tyler had purchased a tract of land, and the vendor refused to take anything in payment thereof but money. The chancellor found this issue of fact against appellants, and it cannot be said that his finding is against the preponderance of the evidence. On the other hand, the testimony of the president of the bank is to some extent corroborated. The record shows that several checks, one of which was for over $1,500 were drawn by Tyler and paid by the bank after it had collected the insurance draft. If the deposit was to be a special one and constituted a trust fund, the original agreement would have been all that was necessary, and the bank would have been bound to pay the debts provided for in the agreement and to pay the balance to Tyler. The fact that checks were drawn in the usual manner payable to the debtors of Tyler and honored by the bank, tends to show that the deposit was a general one and that the checks were drawn in the usual course of business. It seems that a deposit slip was not given to Tyler at the time of the deposit of the insurance draft because there was a condition attached to the deposit that Tyler should not check upon the account until the insurance money had been collected by the bank. This was to protect the bank in case the insurance company would not honor the draft without the policies being attached to it or for any other reason.

The result of our views is that the decree adjudging the deposit to be a general and not a special one was correct, and the decree in that respect will be affirmed; but the court erred in dismissing the complaint

for want of equity because the chancellor erred in holding that the sale of the assets of the insolvent bank to the newly organized bank was not improvident for the reason that some of the subscribers for stock in the newly organized bank were allowed to pay for same by checks on the insolvent bank at the face value of their deposits when the Bank Commissioner knew that they were not worth their face value. Therefore, the decree will be reversed on this branch of the case, and the case will be remanded with directions to the chancery court to overrule the demurrer and for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.