## DUNKIN v. TAYLOR.

4—2651

Opinion delivered June 13, 1932.

*Jack Holt,* for appellant.

*M. A. Hathcoat,* for appellee.

BUTLER, J.  The Citizens' Bank & Trust Company of Harrison, Arkansas, was taken over as an insolvent bank for purposes of liquidation by the Bank Commissioner on December 17, 1930.  The officers and depositors, being anxious to reopen the bank, agreed that it might be opened by issuing to each depositor, in lieu of the payment of cash deposits, three certificates representing in the aggregate the amount of each deposit, payable in three installments, one on December 24, 1931, and the other two on the same date in the years 1932 and 1933.  The certificates were to draw interest at the rate of three per cent. per annum.  This agreement was rati-

fied by the Bank Commissioner, who applied to the Boone Chancery Court for an order authorizing the bank to re-open for business on that basis. The order was made, and the bank reopened for business on February 16, 1931, issuing to each of its depositors the three certificates as aforesaid. The bank continued to do business until September 1, 1931, when it again closed its doors, and was taken over by the Bank Commissioner and is now in process of liquidation.

Owing to the great financial depression prevalent and to the deflation of all values, the liquidating agent has experienced much difficulty in making collections, and many of the securities and other assets of the bank have shrunk in value. Consequently the appellees, the Bank Commissioner and the special deputy in charge of the liquidation of the bank, applied for, and obtained, an order in the Boone Chancery Court by which they were empowered to sell the assets of the bank, real, personal and mixed, piecemeal at private sale, and to compound such of the debts due said bank as might be found bad or doubtful.

This suit was instituted by a number of the depositors of the insolvent bank for themselves and the other depositors seeking to restrain the Commissioner from proceeding under the order of the Boone Chancery Court last mentioned above. The complaint, after reciting the history of the first closing of the bank and its reopening and final closing on September 1, 1931, and the order of the chancery court aforesaid, alleged that many of the notes held by the liquidating agent of the insolvent bank are fully secured by real estate mortgages, that others have good personal security, while many, though unsecured, are made by those who are willing and able to pay in full as soon as they can convert some of their property into cash. It was further alleged that the appellees were offering to accept deposits in payment of these notes and attempting to trade said notes and other assets for property instead of money; that this action on the part of the appellees was

arbitrary and in violation of the rights of the creditors and depositors of said bank and would amount to a dissipation of the assets by the appellees if they should accept for the notes less than the full face value in cash and would operate as a preference to creditors whose deposits in said bank were accepted in payment of these notes. They prayed for an order enjoining the appellees from proceeding further in their attempt to settle and compound the notes, etc., in their possession.

Answer was made admitting the allegations of the complaint except in denying that the action was arbitrary, contrary to law or in violation of the rights of the creditors and depositors of the bank, and alleging that the proposed action would expedite the liquidation of the bank and very greatly reduce the expenses thereof, and was and is for the best interests of the creditors and depositors of said bank and in conformity with the provisions of the law and the orders of the chancery court.

The case was submitted to the court on stipulation of attorneys which recited the facts as above set out, and also that there were outstanding certificates of deposit issued under the reorganization plan in the sum of $69,625.57 in the hands of various depositors to whom they were issued and purchasers of said certificates, some of which sales were made prior, and some subsequent, to the final closing of the bank. It was further stipulated that appellee Watkins, Special Deputy Bank Commissioner, had given notice of his intention to accept said certificates of deposit and other deposits in the bank "on such basis and such conditions as he deems right, fair and equitable, and as in his judgment will conserve the best interest of all concerned in the assets of said bank in payment and satisfaction of any notes held by said bank, both secured or unsecured, which he considers slow, bad or doubtful, whether said certificates are set-offs which he would be required to accept, or not; that he is offering to trade other assets of said bank, such as real estate, furniture and fixtures, for deposits in said bank, and other property besides cash, when in

his judgment it is to the best interest of all those interested in the assets of said bank.''

It was further agreed that many of the notes are secured by mortgages on real estate, which real estate is of equal value to the amount of the notes, but that no loans could be procured on these from any source with which to discharge the indebtedness, and that, if the mortgages are foreclosed, it is doubtful whether any cash could be realized from said sales, and ''highly probable that it would be necessary for the Bank Commissioner to buy said lands in,'' with the result that no cash could be realized and no progress made toward the final liquidation of the bank; that, since the bank had been taken over for liquidation, only $20,696.09 had been collected in cash on the notes held and only $30,730.70 on stock assessments and realized from other assets; that the average monthly expense of liquidation approximated the sum of $920.95. It was also agreed that the course proposed by the Special Deputy Bank Commissioner would greatly expedite the liquidation and materially reduce the necessary expenses thereof; that there were, and are, approximately $11,663.07 in prior claims filed, and that these, with other prior claims, may not be paid in full; that general claims had been filed and allowed in the sum of $390,270.08, and that there are claims due for deposits not yet filed in the sum of $62,881.36, and claims due to banks which have not been filed in the amount of $168,507.44, and that the total assets of the bank as shown by inventory at the close of business just prior to closing the doors of the bank in September, 1931, was $1,282,335.57. Other facts were agreed upon which were not material to the decision of the case.

The case was submitted on the pleadings, the exhibits and the agreed statement of facts. The court entered a decree dismissing the complaint, from which is this appeal.

It is the contention of the appellants that the appellees have no authority under the law or the orders of the chancery court to accept notes held as assets of

said bank for certificates of deposit therein, and that the contemplated action of the appellees exceeds the authorization made by the order of the court and is in violation of the provisions of the statute. The statute upon which the petition of the appellees and the order of the court granting the prayer for authority to dispose of the assets and the compound debts due the bank is act No. 113 of the Acts of 1913, as amended by § 6 of Act 131 of 1917, and § 4 of Act 496 of 1921, and is as follows:

"Upon taking possession of the property and business of any bank, the Commissioner is authorized to collect money due, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided. The Commissioner shall collect all debts due and claims belonging to it, and for such purposes is authorized to institute, maintain and defend suits and other proceedings in this State and elsewhere, and, upon the order of the chancery court of the county in which it is doing business, may sell or compound all bad or doubtful debts and on like order may sell all its real estate and personal property on such terms and at public or private sale, as the court shall direct."

The order of the court under which the appellees were proceeding to act is as follows: "It is by the court considered, ordered and adjudged and decreed that the said Bank Commissioner in charge of the said bank be, and he is hereby authorized, impowered and directed from time to time to sell the assets of said bank, real, personal or mixed, piecemeal and at private sale, and also from time to time to compound such of the debts due said bank as the said Bank Commissioner may find to be bad or doubtful, all such sales and compositions to be upon such terms and considerations as in each instance the said Bank Commissioner may consider to the best interest of the estate herein, all sales so made by the said Bank Commissioner of any of the assets of the said bank consisting of its real estate to be reported by the Bank Commissioner to the court for confirmation."

1038

The appellants call attention to the cases of *Sloss v. Taylor,* 182 Ark. 1031, 34 S. W. (2d) 231; *Krumpen v. Taylor,* 183 Ark. 1046, 40 S. W. (2d) 775, and *Tyler v. Citizens' Bank,* 184 Ark. 332, 42 S. W. (2d) 385, as authority for the position taken that the contemplated action of the appellees is in excess of their power. We do not think the cases are in point. In the Sloss case a debtor of an insolvent bank, after it had closed its doors, purchased certificates of deposit to the amount of his debt and attempted to set off his debt with these certificates. There was an attempt to pay the debt with a certificate of deposit at its face value regardless of what, in fact, such certificate might be worth, and we held that this would tend to secure a preference in favor of the debtor and would be in violation of the policy of our statute.

In *Krumpen v. Taylor,* stockholders in the bank organized to take over an insolvent bank attempted to pay for their certificates of stock by checks on their deposits in the insolvent bank. The payment of the certificates of deposit was not as contemplated by § 8, article 12, of the Constitution, in that it was not made in money or property actually received and was held to be invalid.

In *Tyler v. Citizens' Bank,* the question decided was similar to that in the Krumpen case. The insolvent bank could not pay its depositors dollar for dollar, and the Bank Commissioner, with full knowledge of this, permitted certain subscribers to stock in the new bank to pay for the same by checks accepted at their face value drawn on deposits in the insolvent bank.

In addition to deciding that that case came within the principles of law announced in the Krumpen case, it was held that the action of the Bank Commissioner was tantamount to allowing a preference. However, none of the principles announced in the cases cited apply to the instant case. The statute, the order of the chancery court, and the contemplated action of the appellees go no further than to accept the certificates of deposit on such terms and consideration as shall be fair and equitable and to the interest of all parties concerned, the

appellees being authorized to exercise their judgment as to what would be the best interest of all parties. It is our opinion that the order of the chancery court does not go further than the statute, and nothing appears to indicate that the appellees are not endeavoring to carry out the letter and spirit of the order. To be sure, the appellees must act in good faith, and any act upon their part creating a preference in favor of a debtor or a creditor would be in fraud of the rights of the other parties interested and would be an invalid act, but no such state of facts is presented by the record before us.

The decree of the trial court dismissing the appellants' complaint is correct, and it is therefore affirmed.